OPINION
{¶ 1} David Hamlin appeals from the trial court's January 31, 2006, judgment entry overruling his objections to a magistrate's decision and adopting the decision as its own.
 {¶ 2} David advances six assignments of error on appeal.[1] In his first two assignments of error, he contends the trial court erred in awarding his former wife, appellee Saundra Hamlin, a share of a "Part A" early retirement benefit he receives from General Motors ("GM"). In his third and fourth assignments of error, David asserts that the trial court erred in awarding Saundra a portion of a "Part B Supplementary" retirement benefit he receives. In his fifth assignment of error, he argues that the trial court erred in finding Saundra entitled to purchase an insurance policy on his life. In his sixth assignment of error, David contends the trial court erred in failing to consider the tax consequences of requiring him to pay Saundra her share of a "Part B Primary" retirement benefit he receives.
 {¶ 3} The present appeal is the latest in a series of legal actions between David and Saundra, who were divorced in 1990. At the time of the divorce, David was employed by GM. The divorce decree provided, inter alia, "that David Hamlin's retirement benefits from General Motors should be subject to a QDRO whereby Saundra shall receive her proportionate share of the benefits, based upon the date David begins receiving the benefits."
 {¶ 4} The record reflects that David's retirement plan is referred to as the General Motors Salaried Employees Retirement Plan. It consists of several parts that potentially provide benefits to an employee upon retirement. They include, among others not at issue here, Part A Basic, Part A Early Supplement, Part B Primary, and Part B Supplementary.
 {¶ 5} In March 1995, while David remained employed at GM, the parties negotiated a QDRO dividing his future retirement benefits. The plan administrator subsequently interpreted the QDRO as applying only to David's Part A Basic benefit. Believing that this interpretation was inconsistent with the divorce decree, Saundra moved for clarification of the QDRO. In 1998, the trial court ordered the preparation of a new QDRO dividing both Part A and Part B. In its order, the trial court did not expressly distinguish between Part A Basic and Part A Early Supplement, or between Part B Primary and Part B Supplementary. The trial court simply concluded that under the terms of the divorce decree Saundra "was to receive her proportionate share of all the benefits to be paid out by the pension administrator." (Doc. #115 at 2).
 {¶ 6} In Hamlin v. Hamlin (June 18, 1999), Darke App. No. 99-CA-1484, we agreed with the trial court's finding that Saundra was entitled to share in the Part A and Part B benefits. In our ruling, we too did not expressly distinguish between Part A Basic and Part A Early Supplement, or between Part B Primary and Part B Supplementary. We also upheld the formula the trial court used to divide the parties' respective interests in the Part A benefits. With regard to Part B, however, we remanded the case for the trial court to apply a different formula.
 {¶ 7} A magistrate held a hearing on the remanded issue on January 28, 2003. At the outset of the hearing, Saundra sought to raise the issue of her entitlement to survivor benefits. On April 9, 2003, the magistrate set forth a new formula for dividing Part B of David's retirement benefits. The magistrate also concluded that the issue of survivor benefits was not properly before the court. Over objections by both parties, the trial court adopted the magistrate's decision on September 19, 2003.
 {¶ 8} On appeal, we affirmed the trial court's judgment. In a May 28, 2004, ruling, we agreed that the issue of survivor benefits had not been properly raised in the trial court. We also rejected Saundra's argument that the trial court should have addressed her right to early retirement benefits. We observed that Saundra had not moved for clarification of her right to early retirement benefits. We noted too that David had denied in the January 28, 2003, hearing that he would receive "any special benefit or any additional benefit" by retiring early.
 {¶ 9} Following our ruling, the trial court approved and filed a new QDRO on December 30, 2004. This QDRO recognized that David had retired from GM effective May, 2003. It also clarified Saundra's right to a portion of David's retirement benefits. The figures used to compute Saundra's benefits under this new QDRO demonstrate that it addressed only her entitlement to a share of David's Part A Basic benefit and his Part B Primary benefit.
 {¶ 10} Thereafter, on March 16, 2005, Saundra filed a four-branch motion in the trial court, seeking (1) an order requiring David to pay her the share of his Part B Primary benefit to which she was entitled under the new QDRO; (2) an order granting her a share of David's "early retirement supplement"; (3) an order granting her survivor benefits or, alternatively, the right to obtain an insurance policy on David's life; and (4) an order granting her "any other benefit within the Defendant's retirement to which she may be entitled[.]"
 {¶ 11} A magistrate conducted an August 30, 2005, hearing on Saundra's motion. At the outset of the hearing, David renewed an earlier motion to dismiss on the basis that Saundra's motion was an untimely request for relief under Civ.R. 60(B). He also argued that her motion did not request a portion of his Part B Supplementary benefit. Therefore, he argued that any issue regarding the Part B Supplementary benefit was not properly before the court. The hearing transcript indicates, however, that Saundra intended her request for a share of David's "early retirement supplement" to constitute a request for benefits under Part A Early Supplement and Part B Supplementary.[2] (See Aug. 30, 2005 transcript at 12).
 {¶ 12} In any event, the magistrate heard testimony on the foregoing issues and filed a November 2, 2005, decision and order. On the issue of Saundra's entitlement to additional retirement benefits, the magistrate made the following findings:
 {¶ 13} "The Defendant retired effective as of May 1, 2003. He receives $2,888.57 per month in retirement benefits, which are broken down as follows: $890.94 Part A basic benefit, $501.19 Part B primary benefit, $1,242.58 Early retirement supplement and $253.86 Part B supplementary benefit. Although his supplement was not a cash incentive to retire early (those are offered only to hourly, not salaried employees), the early retirement benefit the Defendant receives is available to an employee who has worked more than 30 years, but has not yet reached 62 years of age. It appears to be similar to a pre-social security supplement and may be reduced when the employee becomes eligible for social security.
 {¶ 14} "The magistrate finds that the Plaintiff is entitled to her proportionate share of the Defendant's pension, including the early retirement supplements. The court obviously intended her to be entitled to her proportionate share of all the benefits as the original order specifically awarded the benefits as of the date the Defendant began receiving them, not as of the date of the divorce. If the amounts are indeed reduced when the Defendant begins to receive social security, the Plaintiff's share of the benefits should be reduced accordingly." (Doc. #236 at 2).
 {¶ 15} On the issue of survivor benefits, the magistrate found that they were not awarded in the divorce decree and, therefore, could not be included in a new QDRO. In essence, the magistrate reasoned that finding Saundra entitled to survivor benefits impermissibly would modify the terms of the divorce decree. However, the magistrate did grant Saundra's alternative request that she be permitted to purchase an insurance policy on David's life. The magistrate found Saundra's request to be reasonable and authorized her to obtain such a policy, provided that "an insurance company will permit her to do so." (Id.).
 {¶ 16} Finally, the magistrate found David obligated to pay Saundra the portion of his Part B Primary benefit to which she was entitled under the December 30, 2004, QDRO. The record reflects that David had been receiving the entire benefit from the pension administrator, despite the language in the QDRO awarding Saundra $81.54 per month from the Part B Primary benefit. Apparently, the pension administrator had not yet implemented the QDRO to commence direct payments to Saundra. As a result, David admittedly was receiving more than his share of the Part B Primary benefit. In finding David obligated to pay Saundra "her share" of this benefit, the magistrate implicitly rejected his argument that the $81.54 owed to Saundra should be reduced by the taxes he had paid on the money. On January 31, 2006, the trial court overruled all objections to the magistrate's decision and adopted the decision as its own. (Doc. #249). This timely appeal followed.
 {¶ 17} In his first assignment of error, David contends the trial court erred in finding Saundra entitled to a share of his Part A Early Supplement because her request for this relief was untimely. David characterizes her March 16, 2005, motion seeking a portion of the Part A Early Supplement as being brought under Civ.R. 60(B). He then argues that she was required to file the motion within one year of the January 28, 2003, hearing mentioned above that led to the filing of a new QDRO on December 30, 2004.
 {¶ 18} Upon review, we find David's argument to be unpersuasive. As an initial matter, it is questionable whether Saundra's March 16, 2005, motion was a true Civ.R. 60(B) motion for relief from judgment.[3] Through her motion, Saundra sought the payment of benefits purportedly due to her under the terms of the divorce decree and prior court orders. In particular, she argued that the divorce decree entitled her to a share of all of David's retirement benefits, including his Part A Early Supplement. To the extent that Saundra was seeking to obtain this benefit, she at least arguably was not seekingrelief from any judgment. In her view, the divorce decree already awarded her the benefit, and the most recent QDRO did not address it. Therefore, she simply was seeking to clarify her right to the benefit. It is difficult to characterize her effort to obtain a benefit allegedly already due her under the divorce decree as a request for relief from a judgment, particularly when the record contains no judgment or order ever denying her a share of David's Part A Early Supplement. This court previously has recognized a trial court's authority to grant relief of the type Saundra sought, apparently without regard to the requirements of Civ.R. 60(B). See, e.g., Coterel v. Coterel,
Montgomery App. No. 20899, 2005-Ohio-5577, ¶ 13-14.
 {¶ 19} But even if we treat Saundra's motion as a true Civ.R. 60(B) motion, we find no merit in David's timeliness argument. He argues that under Civ.R. 60(B), Saundra should have filed her motion for a share of any early retirement benefits within one year of the January 28, 2003, hearing in which a magistrate considered the proper division of David's Part B Primary benefit. We find this argument to be unpersuasive for at least two reasons. First, David denied during the hearing that he would receive "any special benefit or any additional benefit" by retiring early. (Jan. 28, 2003, transcript at 89) (emphasis added). We decline to find Saundra obligated to move for early retirement benefits within one year of a hearing in which David denied that he would receive such benefits. Second, as noted above, the January 28, 2003, hearing ultimately resulted in the filing of a December 30, 2004, QDRO which attempted to clarify Saundra's interest in David's retirement benefits. To the extent that her motion was a true Civ.R. 60(B) motion, Saundra contends it sought relief from this QDRO, which omitted any mention of her right to a share of early retirement benefits. Saundra filed her four-branch motion on March 16, 2005, less than three months after the filing of the QDRO. Therefore, we would find the motion timely under any of the subdivisions of Civ.R. 60(B). Accordingly, we overrule David's first assignment of error.
 {¶ 20} In his second assignment of error, David contends the trial court erred in awarding Saundra a share of his Part A Early Supplement because the award exceeds the scope of the divorce decree. In support, he argues that the value of his Part A Early Supplement is computed using a formula that takes into account, among other things, his higher salary level during post-divorce employment at GM.
 {¶ 21} Upon review, we find no merit in David's argument. As set forth above, the divorce decree provided, inter alia, "that David Hamlin's retirement benefits from General Motors should be subject to a QDRO whereby Saundra shall receive her proportionate share of the benefits, based upon the date David begins receiving the benefits." The trial court previously interpreted this language to mean that Saundra "was to receive her proportionate share of all the benefits to be paid out by the pension administrator." (Doc. #115 at 2). David now concedes that his benefits include a Part A Early Supplement, which is an early retirement benefit he receives prior to qualifying for Social Security. In order to obtain this benefit, David was required to retire before age sixty-two with at least 30 years of employment. It is undisputed that David worked at GM for approximately 23 years during the parties' marriage. Therefore, a significant portion of his Part A Early Supplement is based on work performed during the marriage. In light of this fact, we find no error in the trial court's determination that Saundra is entitled to a share of the benefit.
 {¶ 22} David's only argument to the contrary is that the dollar value of the Part A Early Supplement is computed using a formula that takes into account his salary in years after the divorce. Regardless of how it is calculated, however, the fact remains that David earned much of the Part A Early Supplement based on years of work performed during the marriage. The dollar value of many, if not most, pensions is computed based on an employee's higher salary in later years of employment. This does not mean the other spouse is not entitled to share in the benefit to the extent it was earned during the marriage. David cites no authority to support such a proposition, and we find his argument to be unpersuasive. The second assignment of error is overruled.
 {¶ 23} In his third assignment of error, David contends the trial court erred in awarding Saundra a share of his Part B Supplementary benefit because her March 16, 2005, motion did not address the issue. We find this argument to be without merit. Saundra's four-branch motion sought (1) an order requiring David to pay her the share of his Part B Primary benefit to which she was entitled under the existing QDRO; (2) an order granting her a share of David's "early retirement supplement"; (3) an order granting her survivor benefits or, alternatively, the ability to obtain an insurance policy on David's life; and (4) an order granting her "any other benefit within the Defendant's retirement to which she may be entitled[.]"
 {¶ 24} A transcript of the August 30, 2005, hearing on Saundra's motion suggests that she intended her request for a share of David's "early retirement supplement" to constitute a request for benefits under Part A Early Supplement and Part B Supplementary. (See Aug. 30, 2005 transcript at 12). On appeal, David contends the Part B Supplementary benefit — unlike the Part A Early Supplement — is not really an "early retirement" benefit. This assertion contradicts the testimony of his own expert witness, former GM human resources representative Deborah Llewellyn. During the August 30, 2005 hearing, she testified that the Part B "supplementary" benefit was a benefit that an employee received if he retired early. (Id. at 134-135, 139). Moreover, in argument to the magistrate, Saundra's attorney referred to the Part B benefit as an "early retirement supplement."
 {¶ 25} Even assuming, purely arguendo, that Llewellyn and Saundra both misunderstood the nature of the Part B Supplementary benefit, the magistrate did not err in considering the issue and hearing testimony on it. At a minimum, the Part B Supplementary benefit issue could have been addressed pursuant to Saundra's catch-all request for "any other benefit within the Defendant's retirement to which she may be entitled[.]" This is particularly true given that David was prepared to address the issue at the August 30, 2005, hearing, and, therefore, was not prejudiced by the magistrate's consideration of it. Accordingly, we overrule his third assignment of error.
 {¶ 26} In his fourth assignment of error, David contends the trial court erred in awarding Saundra a share of his Part B Supplementary benefit because the award exceeds the scope of the divorce decree. David's only argument on this point is that the value of the Part B Supplementary benefit is computed using the average of his highest 60 months' salary during the 120-month period immediately preceding his retirement. Because the parties divorced prior to commencement of this 120-month look back period, David contends the Part B Supplementary benefit is an asset he earned entirely after the divorce.
 {¶ 27} We find the foregoing argument unpersuasive for essentially the same reason we rejected David's second assignment of error. The fact that the dollar value of the Part B Supplement is calculated based on the level of David's post-divorce salary fails to establish that the benefit itself was earned entirely after the parties' divorce. David cites nothing to support such a conclusion. Therefore, we cannot say that the trial court erred in finding Saundra entitled to a share of the Part B Supplementary benefit.[4] David's fourth assignment of error is overruled.
 {¶ 28} In his fifth assignment of error, David claims the trial court erred in finding Saundra entitled to purchase an insurance policy on his life. Given that the divorce decree did not award her any survivor benefits, David contends the trial court exceeded its authority by granting her the right to purchase insurance on his life in lieu of such benefits.
 {¶ 29} We agree. The divorce decree did not award Saundra survivor benefits. Thus, the trial court correctly held that she was not entitled to them. See, e.g., Tarbert v. Tarbert (Sept. 27, 1996), Clark App. No. 96-CA-0036 (recognizing that a court cannot enter orders granting rights that were not provided for in a divorce decree). By the same token, nothing in the divorce decree authorized Saundra to obtain an insurance policy on David's life. By granting her this ability, the trial court effectively modified and expanded her rights under the divorce decree.
 {¶ 30} Although the trial court found Saundra obligated to pay the life insurance policy premium, David's cooperation undoubtedly would be required before any company would issue her a policy on his life. At a minimum, he would be compelled to answer a questionnaire and possibly undergo a physical examination. In light of the trial court's order finding Saundra entitled to obtain an insurance policy, David also would be obligated to provide such cooperation under the potential penalty of a contempt sanction. We find no authority for the trial court's imposition of such a burden on David. For the foregoing reasons, we sustain his fifth assignment of error.
 {¶ 31} In his sixth assignment of error, David contends the trial court erred in failing to consider the tax consequences of requiring him to pay Saundra her share of his Part B Primary benefit. This argument concerns the $81.54 that Saundra is entitled to receive each month from David's Part B Primary benefit under the terms of the December 30, 2004, QDRO. Since that date, David has continued to receive the $81.54 designated for Saundra, apparently due to red tape in the retirement plan administrator's implementation of the QDRO. In any event, David argues that the $81.54 per month he owes Saundra should be reduced by $25.24 to account for income taxes he paid on the money after receiving it.
 {¶ 32} Neither the magistrate nor the trial court expressly resolved David's argument, but they implicitly rejected it by ordering him to pay Saundra's "share of the Part B benefits" without making any allowance for a deduction.[5] Upon review, we do not believe the trial court erred in declining to authorize a $25.24 per month reduction in the Part B Primary benefit David owes Saundra. We reach this conclusion for several reasons. First, David has enjoyed the time value of Saundra's money every month since he began receiving it. Second, he has not even addressed his potential ability to amend his tax return to reflect the payments to Saundra or to deduct them in the future. Third, even if David cannot recover the taxes he paid, Saundra presumably will be required to pay her own taxes on the money when she receives it. Allowing David to reduce the $81.54 by $25.24 before sending it to Saundra, who then might pay her own taxes on the remaining $56.30 would penalize her through no fault of her own. Finally, we find the taxes paid by David to be relatively de minimus in relation to his overall retirement package. For these reasons, we see no error in the trial court's failure to reduce the $81.54 per month David owes Saundra by the amount of the taxes he paid on the money. David's sixth assignment of error is overruled.
 {¶ 33} Having sustained David's fifth assignment of error, however, we modify the trial court's January 31, 2006, judgment entry, pursuant to App.R. 12(A)(1)(a), as follows: We vacate the portion of the entry adopting the magistrate's decision to grant Saundra a right to obtain an insurance policy on David's life. As so modified, the trial court's judgment is hereby affirmed.
 . . . . . . . . . . .
Wolff, J., and Walters, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] For purposes of clarity, we will refer to the parties by their first names.
[2] As noted above, the most recent QDRO already had recognized her right to a share of David's benefits under Part A Basic and Part B Primary.
[3] In the branch of her motion requesting a share of David's early retirement benefits, Saundra stated: "To the extent the Court deems necessary, this request is pursuant to Civil Rule 60(B) and or simply to have the Court enforce its prior decision." (Doc. #216 at 2). This language indicates that Saundra herself was unsure how to characterize her motion and that she was not limiting herself to relief under Civ.R. 60(B).
[4] The actual portion of the Part B Supplementary benefit to which Saundra is entitled depends, of course, on how much of it was earned through David's employment during the marriage. This issue has not been raised in the present appeal. We note too that neither the magistrate nor the trial court awarded Saundra a specific amount of the Part B Supplementary benefit. They merely found her entitled to "her proportionate share."
[5] We note that Saundra's appellate brief makes passing reference to a "cross appeal" in this case. Her only argument under the purported cross appeal, however, is that the trial court did not err in refusing to allow David to deduct income taxes from the Part B Primary benefit money he owes her. Because Saundra's argument merely urges affirmance of the trial court's judgment on this issue, there is no true cross appeal before us.