OPINION
{¶ 1} Plaintiff-Appellant, Pamela J. Hale Rose, appeals a judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, granting the motion of her ex-husband, Chris W. Hale, and vacating the Qualified Domestic Relations Order herein. Pamela argues that the existing QDRO, which divided Chris' early retirement supplement as well as his basic pension *Page 2 
benefits from employment during the marriage, reflected the terms of the parties' settlement agreement of September 23, 2002. Finding that the trial court erred as a matter of law, we reverse.
 {¶ 2} On September 23, 2002, Pamela and Chris Hale entered into a stipulated agreement resolving the issues in their pending divorce. This agreement was reflected in a Judgment Entry filed December 5, 2002. The entire language of the Judgment Entry, which is consistent with the oral stipulation, pertaining to retirement benefits provided:
 {¶ 3} "* * * the marital portion of [Chris's] retirement/profit sharing benefits through his employment with General Motors shall be equally divided between the parties. A Qualified Domestic Relations Order shall issue.
 {¶ 4} "For purposes of preparing the Qualified Domestic Relations Order, it is noted that [Pamela and Chris] have been married twenty one years of twenty six years [Chris] has been employed at General Motors. [Pamela] would therefore be entitled to one half of 21/26 of the accumulated benefits as of the date of the filing of this Decree. It is further noted that in the event [Chris] would take an `early out' and receive a bonus for same, [Pamela] would be entitled to one half of the `marital portion' of same.
 {¶ 5} "The parties specifically agree [Pamela] shall not be entitled to any increases in [Chris's] retirement (to which he may become entitled by virtue of remaining on the job beyond the date of the filing of this decree), which may accrue after the filing of this Decree, with the exception that she will be entitled to cost of living increases as to her portion of the retirement.
 {¶ 6} "It is further ordered [Chris] shall elect survivor benefits in order to insure [Pamela's] rights as stated above as to her portion of his retirement. The cost of that option shall be borne equally by the parties." *Page 3 
 {¶ 7} The trial court concurrently issued a separate order that a QDRO shall be filed within thirty days of the entry of the judgment.
 {¶ 8} Thereafter a dispute arose between the parties as to the appropriate language for the QDRO, resulting in the trial court's appointment, on July 11, 2003, of David Kelly, of Pension Evaluators, to prepare the QDRO under the terms and conditions as agreed by the parties within forty-five days. In the interim, both Pamela and Chris substituted counsel. On December 2, 2003, a QDRO was filed by Pamela and ordered by the court. This judgment reflects that it was submitted directly to Chris (and not his new counsel) for approval, but that it was not approved.
 {¶ 9} On February 5, 2004, Chris filed a motion to vacate the QDRO, pursuant to Civ.R. 60, alleging that David Kelly did not prepare such QDRO pursuant to the court's prior order, that the QDRO submitted to the court had never been submitted to Chris's new counsel for approval, and that some of the terms contained in the QDRO were not agreed to by the parties. Specifically, David argued that Pamela should not receive any supplemental retirement benefits that General Motors provides to retirees who are not yet eligible for social security benefits; that the valuation date of his benefits should have been September 22, 2002, the date of the stipulated agreement, not December 5, 2002, the date of the judgment entry; and that she should not be eligible for any post-retirement benefits that may accrue to Chris.
 {¶ 10} On June 3, 2004, this motion was heard by the magistrate, who found that the stipulated agreement from the record as well as the judgment entry clearly provided that it was the intention of the parties to divide all accrued retirement benefits earned by Chris pursuant to the formula provided, and that Chris failed to demonstrate that there was any reservation of the supplemental retirement benefits. The magistrate further found the December 5, 2002 valuation date *Page 4 
to be appropriate, and that the QDRO does not provide for Pamela to receive any benefits accruing to Chris after the termination of the marriage except for cost of living increases. As a result, Chris's motion was overruled.
 {¶ 11} Chris filed objections to the magistrate's decision, and on March 10, 2005, the trial court vacated the magistrate's order and the QDRO, and ordered Chris to file a new QDRO. The trial court found, considering the same evidence as the magistrate, that the parties agreed to the September 22, 2002 valuation date, and that the parties did not intend to include the supplemental retirement benefits, apparently believing that the supplemental benefit was an "* * * increase or bonus that would accrue after [September 22, 2002] * * *."
 {¶ 12} It is from this judgment that Pamela appeals, setting forth the following assignment of error for our review: "The trial court erred in finding that the QDRO did not reflect the terms of the parties' agreement, as read into the record on September 23, 2002."
 {¶ 13} Retirement benefits that spouses acquire during a marriage are a marital asset that must be divided between the spouses pursuant to R.C. 3105.171. R.C. 3105.171(I) further provides that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." If a divorce decree is ambiguous as to its division of a retirement plan, however, a trial court can properly clarify its meaning without violating R.C.3105.171(I). McKinney v. McKinney (2001), 142 Ohio App.3d 604, 608,756 N.E.2d 694, citing Weller v. Welter (1996), 115 Ohio App.3d 173, 179,684 N.E.2d 1284. An ambiguity arises "when a provision in an order or decree is reasonably susceptible of more than one meaning."McKinney, 142 Ohio App.3d at 609.
 {¶ 14} A QDRO is a current distribution of the rights in a retirement account that is payable *Page 5 
in the future, when the payee retires. It is ordinarily issued subsequent to and separate from the decree of divorce itself, after the employer or payor has approved its terms as conforming with the particular pension plan involved. A QDRO is, therefore, merely an order in aid of execution on the property division ordered in the divorce decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3109.171(I) prohibits, and the court does not lack jurisdiction to issue it. Tarbert v. Tarbert (Sept. 27, 1996), Clark App. No. 96-CA-0036. If the QDRO, however, is inconsistent with the decree, the trial court lacks jurisdiction to issue the same, and it is void.
 {¶ 15} In enforcing a prior distribution of property, the plain language of the prior order is a question of law, which this court reviews de novo. However, if the prior order is ambiguous, then the trial court must hear the matter, clarify the meaning, and resolve the dispute through interpretation. Jackson v. Hendrickson, Montgomery App. No. 20866, 2005-Ohio-5231. Although a trial court may not modify or rewrite a prior decree in order to ensure that it is equitable, the court must, in interpreting an ambiguous property division, consider both the equities involved and the law in determining the intent. See, e.g., Proctor v. Proctor (1997), 122 Ohio App.3d 56, 60, 701 N.E.2d 36;Bond v. Bond (1990), 69 Ohio App.3d 225, 227, 590 N.E.2d 348. In reviewing a trial court's determination as to an ambiguity, we would review on an "abuse of discretion" standard.
 {¶ 16} Therefore, our review must first focus on the December 5, 2002 judgment entry of divorce, and determine whether there is an ambiguity that the trial court is entitled to construe, and second whether the QDRO comports with the decree either as filed or as subsequently construed by the trial court.
 {¶ 17} In this case, curiously, both the magistrate and the trial court found the December 5, *Page 6 
2002 judgment entry of divorce to be unambiguous, while coming to opposite conclusions as to its meaning. The trial court, contrary to the recommendation of the magistrate, found that the QDRO did not properly reflect the terms of the judgment entry, and ordered that it be vacated. Because there has been a finding of no ambiguity in the prior judgment, a decision that we agree with, we will review the provisions of the December 22, 2002 judgment de novo.
 {¶ 18} The first issue presented to the trial court was whether the QDRO should include the supplemental retirement benefits that General Motors provides to retirees who are not yet eligible for social security benefits.
 {¶ 19} In determining what the language of a judgment entry means, a reviewing court must consider the equities and the law involved. Pursuant to R.C. 3105.171(E)(1), a marital asset is one acquired during marriage. The proportion of a retirement benefit that was earned during marriage is a marital asset. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 132, 541 N.E.2d 597. Where the plan is vested but unmatured, as it is in this case, the court awards each party a share in the marital asset. The value of the marital asset is thereafter determined by computing the ratio of the number of years of employment during marriage to the total years of employment. Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 182, 559 N.E.2d 1292. In this case, that award was appropriately calculated at fifty percent of 21/26 of Chris's retirement benefits since the marriage spanned twenty-one years of Chris's total employment of twenty-six years at General Motors.
 {¶ 20} We next look at what specific benefits are properly included in the retirement benefits earned during the marriage. In the recent caseof Hamlin v. Hamlin, Darke App. No. 1683, 2006-Ohio-6117, this court affirmed the trial court's determination that early supplemental retirement benefits that were a part of a General Motors pension, were properly divisible as marital property *Page 7 
because these benefits were earned, in large part, during the marriage. We have found likewise in Coterel v. Coterel, Montgomery App. No. 20899,2005-Ohio-5577, and Gearhart v. Gearhart (Nov. 19, 1999), Montgomery App. No. 17725. In no instance has this court determined that such benefits are not properly divisible by a trial court as marital property earned during the marriage. In order for them to be excluded from the retirement benefits divisible by the QDRO, there must have been a specific exclusion of them in the settlement agreement. Therefore, our de novo review finds that Chris's early supplemental retirement benefits must be included in the QDRO.
 {¶ 21} Second, we consider what is the proper valuation date of Chris's retirement benefits for the purpose of the QDRO. The judgment entry of divorce provides that: "Plaintiff would therefore be entitled to one half of 21/26 of the accumulated benefits as of the date of thefiling of this Decree." (emphasis supplied.) The judgment entry was filed on December 5, 2002, and it was approved prior to filing by counsel for both parties. The agreement that was stipulated into the record is silent as to a valuation date, except that it provides, in talking to post retirement increases that accrue subsequently, that: "any benefits that accrue that incur [sic] after today's date she will not be entitled to."
 {¶ 22} Since the issue before this court and the trial court is whether the QDRO should be vacated because it is inconsistent with the judgment of divorce, and not as whether the judgment entry of December 5, 2002, which has never been appealed, is consistent with the stipulated agreement, we may only consider the December 5, 2002 judgment entry.[1] In looking at this judgment, again we find that there is no ambiguity and that the decree clearly provides that the *Page 8 
valuation date shall be the date of the filing of the judgment entry, December 5, 2002.
 {¶ 23} Finally, we consider the issue of whether the QDRO provides benefits to Pamela for any post-retirement benefits, other than cost of living increases, that may accrue to Chris.
 {¶ 24} The December 5, 2002 judgment entry provides "the Plaintiff shall not be entitled to any increases in Defendant's retirement (to which he may become entitled by virtue of remaining on the job beyond the date of the filing of this decree), which may accrue after the filing of this Decree, with the exception that she will be entitled to cost of living increases as to her portion of the retirement."
 {¶ 25} Clearly this means that any new benefits that are created by General Motors after the divorce would accrue solely to Chris. It also means, however, that any existing benefits that are available and that are based upon his employment during the marriage, that may be elected in the future, even if Chris does not currently qualify for them, are properly included within the retirement benefits that must be divided by the QDRO pursuant to the December 5, 2002 judgment entry.
 {¶ 26} The QDRO provides, in numbered paragraph 8: "Post Retirement Increases: The Alternate Payee is entitled to a share of any post-retirement increase. * * *." We find this language to be inconsistent with the language of the divorce decree, and for that reason alone, we find that the QDRO must be vacated to clarify this issue consistent with the language of the December 5, 2002 judgment entry.
 {¶ 27} For the reasons stated herein, Appellant's assignment of error is sustained in part and overruled in part.
 {¶ 28} The judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, is hereby reversed, and the cause is remanded to the trial court for further proceedings *Page 9 
consistent with this opinion.
WOLFF, P.J., and BROGAN, J. concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] We note incidentally that the December 5, 2002 judgment entry was prepared by counsel for Chris, who now urges the court to determine that the judgment entry is inconsistent with the stipulated agreement. *Page 1