OPINION *Page 2 
¶ {1} Defendant-appellant William Dennison appeals the decision of the Monroe County Common Pleas Court clarifying the divorce decree due to an ambiguity in it. The first issue in this appeal is whether the trial court erred when it clarified the divorce decree. The second issue is whether William's claim that it is impossible to comply with the decree is ripe for review. For the reasons expressed below, the judgment of the trial court is affirmed.
 STATEMENT OF CASE ¶ {2} Plaintiff-appellee Sandra Dennison nka Sandra Dougherty (Sandra) and defendant-appellant William Dennison (William) were married August 15, 1965. Sandra filed a complaint for divorce on September 2, 2004. The parties reached an oral separation agreement and on July 27, 2005 a final divorce decree was issued. The separation agreement was approved by the court and made a part of the decree. 07/27/05 J.E.
¶ {3} On January 10, 2006, the trial court issued a Nunc Pro Tunc order. This order added the property division of the jointly owned "Fairfield Timeshare Property" and the Tank Investment that had been inadvertently omitted from the July 27, 2005 final divorce decree. The Nunc Pro Tunc order, as to the "Fairfield Timeshare Property" and Tank Investment, specifically stated:
¶ {4} "6. The wife shall be awarded her proportionate share of the Tank Investment Limited Partnership and 401K Plan. Further, wife shall be awarded her proportionate share of the Consol Energy Investment/Savings Plan. The wife's `proportionate share' of the Tank and Consol investments is fifty percent (50%) as of the date of hearing, (July 11, 2005) plus any additions or losses due to market values on or after said date. Counsel for plaintiff shall prepare the appropriate Qualified Domestic Relations Order (QDRO), submit the same for approval to counsel for defendant, and thereafter to this Court, within a reasonable time from the filing date of this divorce decree.
¶ {5} "* * *
¶ {6} "11. The Fairfield Property Time Share which the parties jointly own shall be sold, with any net proceeds from said sale divided equally between the *Page 3 
parties. Further, the parties shall be equally responsible for the costs of sale of said real property."
¶ {7} On September 18, 2007, Sandra filed a contempt motion against William. She asserted that she had not received the one-half value of the "Fairfield properties" and had not received her share of the Tank Investment, which was $700.[1]
 ¶ {8} A hearing was held on that matter on November 16, 2007. The parties disputed whether the Nunc Pro Tunc order included both Fairfield Timeshare properties acquired during the marriage or only the one that was owned jointly in both parties' names. Two Fairfield Timeshare properties were acquired during the marriage. One was for a property in North Carolina that was deeded solely in William's name. This property was acquired during the late 1970s, early 1980s (during the marriage). The other Fairfield Timeshare property was for a Florida property that was acquired in July 2002 (also during the marriage). This property was deeded jointly to Sandra and William.
¶ {9} William argued at the hearing that the Nunc Pro Tunc Order specifically stated "Fairfield Property Time Share," in the singular, not plural. Furthermore, the order specifically referred to the property that was "jointly owned." He contends that the Florida property was the only one jointly owned, therefore, the order clearly was only referring to the Florida property. However, he admitted that as of the date of the hearing he had not sold the Florida property as was required by the decree.
¶ {10} Sandra argued at the hearing that both properties were jointly owned because they were acquired during the 40 year marriage and moreover that she always believed they were both titled in both their names. It was not until September 2007 that she found out the North Carolina property was titled solely in William's name. Furthermore, she contended that the singular use of "Fairfield Property Time Share" in the Nunc Pro Tunc order was a typographical error.
¶ {11} After hearing those arguments, the trial court determined that there was a good faith confusion, ambiguity over the requirements of the divorce decree as it pertained to the Fairfield Timeshare properties. 12/04/07 J.E. Thus, it determined that it had the right to clarify the confusion. It held: *Page 4 
 ¶ {12} "23. In the instant case, the Court finds that the separation agreement that the parties entered into at the time of their final divorce hearing which referred to The Fairfield timeshare, which the parties jointly own' included both the Destin, Florida and the North Carolina properties.
¶ {13} "24. To hold otherwise would be unjust and inequitable.
¶ {14} "25. Had one of the parties intended to sell and divide the proceeds of only one of the timeshare properties, then their separation agreement would have specifically outlined that understanding.
¶ {15} "26. The parties acquired both the Florida and the North Carolina Fairfield timeshare properties during lengthy union. The fact that one property was deeded to both parties and one to Mr. Dennison alone is immaterial for purposes of the Court making an equitable property division.
¶ {16} "27. Thus, the Florida and North Carolina timeshare properties shall be appraised immediately and shall be listed for immediate sale with a licensed realtor consistent with the parties' original separation agreement. The properties shall be sold for a price consistent with its fair market value and any profits from said sale shall be equally divided between Mr. Dennison and Ms. Dougherty [Sandra]." 12/04/07 J.E.
¶ {17} However, the trial court held that William was not in contempt because he had not intentionally and deliberately violated the prior order. William timely appeals from that decision.
 FIRST ASSIGNMENT OF ERROR ¶ {18} "THE COURT COMMITTED PREJUDICIAL ERROR BY MODIFICATION OF A PROPERTY SETTLEMENT CONTRARY TO THE PROVISION OF O.R.C. 3105.171(I) PROHIBITING SUCH MODIFICATION.
¶ {19} "THE COURT COMMITTED PREJUDICIAL ERROR BY MODIFICATION OF PRIOR ORDERS IN THE ABSENCE OF A CIV.R. 60(B) MOTION BEING TIMELY FILED WITHIN ONE YEAR."
¶ {20} William first argues that the trial court erred when it "modified" the divorce decree because R.C. 3105.171(I) prohibits such action and because Sandra did not file a Civ. R. 60(B) motion to vacate. Here, Sandra was not seeking a modification from the trial court; rather, she was seeking enforcement of a prior *Page 5 
judgment through a contempt motion. Trial courts have the power to enforce its prior judgments and a motion for contempt is a means to have a trial court enforce its prior judgment. Leslie v. Johnston, 5th Dist. No. 2006-CA-00114, 2007-Ohio-2901, ¶ 35. It was during the contempt hearing that the disagreement arose as to what the decree meant. The trial court then found that the decree was ambiguous and clarified the decree.
¶ {21} While it is true that R.C. 3105.171(I) prohibits a trial court from modifying a divorce decree, clarification of an ambiguity in a decree does not violate R.C. 3105.171(I) and its prohibition against modification. Hale v. Hale, 2d Dist. No. 21402, 2007-Ohio-867, ¶ 13. It has been explained that when enforcing a prior property distribution, if the terms of the decree are unambiguous then the courts must apply normal rules of construction, i.e. plain language. Id. at ¶ 15;Houchins v. Houchins, 5th Dist. No. 2006CA00205, 2007-Ohio-1450, ¶ 21. But, if the prior order is ambiguous, then the trial court must hear the matter, clarify the meaning, and resolve the dispute through interpretation. Hale, 2d Dist. No. 21402, 2007-Ohio-867, ¶ 15, citingJackson v. Hendrickson, 2d Dist. No. 20866, 2005-Ohio-5231;Houchins, 5th Dist. No. 2006CA00205, 2007-Ohio-1450, ¶ 21 (stating the trial court has broad discretion to clarify ambiguous language in a divorce decree). See, also, Galvin v. Adkins, 9th Dist. No. 08CA009322,2008-Ohio-3202, ¶ 17 (stating that if there is a good faith confusion over the interpretation of a term of a divorce decree the trial court has the power to clarify the confusion and resolve the dispute).
¶ {22} Ambiguity, as used in this instance, only arises "when a provision in an order or decree is reasonably susceptible of more than one meaning." McKinney v. McKinney (2001), 142 Ohio App.3d 604, 609. Furthermore, in resolving the ambiguities, while "a trial court may not modify or rewrite a prior decree in order to ensure that it is equitable, the court must, in interpreting an ambiguous property division, consider both the equities involved and the law in determining the intent." Hale at ¶ 15, citing Proctor v. Proctor (1997),122 Ohio App.3d 56, 60 and Bond v. Bond (1990), 69 Ohio App.3d 225, 227.
¶ {23} Thus, as can be seen from a recitation of the law, clarifying an ambiguous order is permitted. There is no violation of R.C. 3105.171(I) and no need *Page 6 
to file a Civ. R. 60(B) motion. Consequently, since the trial court found the order was ambiguous, it was permitted to clarify it.
¶ {24} In William's brief, he next implies that the trial court erred in finding that the Nunc Pro Tunc order was ambiguous. Without passing judgment on whether or not the Nunc Pro Tunc order was ambiguous, after reviewing the entire record, we find that the trial court was also correcting a clerical mistake in that order and that correction lead to the same result as its clarification of the alleged ambiguity.
¶ {25} In the December 4, 2007 judgment, the court stated:
¶ {26} "17. This Court finds that the parties, through their counsel, represented to this Court at the final divorce hearing that the `Fairfield property timeshare' meant all of the Fairfield properties that the parties acquired during the marriage." 12/04/07 J.E.
¶ {27} That statement by the trial court is supported by the record. At the hearing prior to the final divorce decree, the parties discussed the Fairfield Properties in the plural:
¶ {28} "Mr. Buell [counsel for William]: The parties have a time share deeded ownership in Fairfield Properties.
¶ {29} "That is going to be placed on the market and sold, with the parties retaining one-half each or equally dividing the net proceeds received from the sale of this." (02/08/08 Tr. 7).
¶ {30} Discussing the Fairfield properties in the plural indicates that it is discussing more than one property. Thus, as it was represented to the court that it was more than one property, the Nunc Pro Tunc order should have referred to the Fairfield properties, not Fairfield property.
¶ {31} Civ. R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes that are apparent on the record but does not authorize a trial court to make substantive changes to judgments.Atwater v. Delaine, 155 Ohio App.3d 93, 2003-Ohio-5501, ¶ 11, citingLondrico v. Delores C. Knowlton, Inc. (1993), 88 Ohio App.3d 282, 285. The term "clerical mistake" refers to a mistake of omission mechanical in nature and apparent on the record that does not involve a legal decision or judgment. Atwater, 155 Ohio App.3d 93, 2003-Ohio-5501, at ¶ 11, citing Londrico, 88 Ohio App.3d at 285. Clearly referring to the Fairfield properties in the singular was a *Page 7 
typographical mistake that would fall under Civ. R. 60(A) and the trial court was permitted at any time to correct it.
¶ {32} When the Fairfield property timeshare is changed to the plural and is read in conjunction with the other language in the Nunc Pro Tunc order, there is no ambiguity and it is clear the parties were referring to both the Florida and North Carolina Fairfield properties. This is so because the Nunc Pro Tunc order states jointly owned not jointly deeded. Any property acquired during marriage is marital, unless evidence is offered to rebut that presumption. Kotch v. Kotch, 5th Dist. Nos. 2007CA271, 2007CA317, 2008-Ohio-5084, ¶ 30, citing Barkley v.Barkley (1997), 119 Ohio App.3d 155. Everything in the record indicates that both the Florida and North Carolina timeshares were acquired during the marriage. Thus, as there was no evidence to the contrary, both properties were jointly owned because they were acquired during the forty year marriage.
¶ {33} Consequently, the trial court's correction of the clerical error was permitted and the trial court's determination that the Nunc Pro Tunc Order meant William was to sell both timeshare properties, the Florida and North Carolina properties, and split the proceeds between himself and Sandra was also correct. This assignment of error lacks merit.
 SECOND ASSIGNMENT OF ERROR ¶ {34} "THE COURT CANNOT ORDER ISSUE AN ORDER [SIC] THAT IS IMPOSSIBLE TO PERFORM BY VIRTUE OF A GOOD FAITH CHANGE OF CIRCUMSTANCES."
¶ {35} The trial court gave the following order about the sale of the timeshares:
¶ {36} "27. Thus, the Florida and North Carolina timeshare properties shall be appraised immediately and shall be listed for immediate sale with a licensed realtor consistent with the parties' original separation agreement. The properties shall be sold for a price consistent with its fair market value and any profits from said sale shall be equally divided between Mr. Dennison and Ms. Dougherty [Sandra]." 12/04/07 J.E.
¶ {37} At the November 16, 2007 hearing, William testified that he exchanged the North Carolina timeshare for points to other resorts. (11/16/07 Tr. 49-50). Accordingly, he contends that the trial court's December 4, 2007 order is impossible to *Page 8 
perform because he cannot sell what was already exchanged and he further argues that the points cannot be divided between him and Sandra. Thus, in his opinion, it was reversible error to order an impossible act. This argument has yet to be asserted to the trial court.
¶ {38} We find his argument premature and not ripe for review. Impossibility is typically an affirmative defense; for instance, it is an affirmative defense to breach of contract and contempt claims.Skilton v. Perry Local School Dist. Bd. of Educ, 11th Dist. No. 2001-L-140, 2002-Ohio-6702, ¶ 26 (impossibility is an affirmative defense to breach of contract); In re Purola (1991), 73 Ohio App.3d 306,313-314 (impossibility is an affirmative defense to contempt);Olmsted Tp. v. Riolo (1988), 49 Ohio App.3d 114, 117 (impossibility is an affirmative defense to contempt). The Fourth Appellate District was faced with a similar argument to the one made here. Young v. SpringValley Sales, 4th Dist. No. 00CA15, 2001-Ohio-2681. In that case, appellant argued that it could not comply with the order of the decree to return the mobile home because it had already sold it to a person that was not a party to the action. The appellate court found that the argument was not ripe for review. It explained:
¶ {39} "While appellants may have informed the trial court that the mobile home was allegedly sold in their memorandum in opposition to appellee's motion for relief from judgment, which appellants filed twenty-six days after the lower court's entry was issued, no motion attesting to the impossibility of performing the judgment was filed below.
¶ {40} "Whether appellants must produce the mobile home, disgorge the proceeds from the sale, or provide appellee some other relief, is an issue that must be first addressed by the trial court, with the benefit of further discovery, before it can be properly presented to us. Thus, the time for judicial relief in this Court, on this issue, has not yet arrived." Id.
¶ {41} We agree and adopt the above analysis as our own and accordingly apply it to this case. The issue of impossibility is not ripe for review. Impossibility must be raised to the trial court as either a defense to a contempt motion for failing to comply with an order of the court or through a motion to the trial court asserting impossibility. Thus, in this instance, William should either assert impossibility to the *Page 9 
trial court through his own motion or wait for Sandra to file a contempt motion for failing to comply with the December 4, 2007 order and assert it as a defense. This assignment of error lacks merit.
¶ {42} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
[1] The Tank Investment determination is not raised in the appeal and, as such, is not addressed. *Page 1