OPINION
{¶ 1} Plaintiff-appellant Richard J. Boso appeals the decision of the Jefferson County Common Pleas Court allocating marital debts in a divorce decree. Appellant complains that it was inequitable to allocate to him all of the joint business debt that he has paid since the parties' date of separation. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE FACTS {¶ 2} The parties were married for just under nine years. They lived together seven years before marriage but had a written agreement so their initial cohabitation arrangement would not carry the financial consequences of marriage. No children were borne of the marriage.
 {¶ 3} In early 2001, the parties purchased a restaurant/bar/marina, which they named Bo's Lighthouse. They paid $335,000 for the establishment, and they borrowed another $15,000 for start-up costs. This $350,000 was funded by a first and second mortgage. Apparently the business operated at a loss each year and had many debts such as unpaid sales taxes, federal payroll taxes, and wages. The last tax return showed an operating loss of $190,000.
 {¶ 4} In June 2003, the parties separated. The business closed in the fall of 2003 and was sold in June 2004. It could not be sold earlier due to a frozen liquor license as a result of unpaid bills and a failure to seek renewal. Although the business sold for $420,000, there was no profit at the closing due to the mortgages and tax liens.
 {¶ 5} The divorce trial was held on July 15, 2004. Appellant testified he paid $56,584.85 in joint business debt since the time of separation. The debts were itemized in Plaintiff's Exhibit 10. As appellant was testifying to the itemization, appellee's counsel stipulated that appellant paid these bills. (Tr. 72). Appellant also established outstanding joint business debt of $45,381.67.
 {¶ 6} The court made findings of fact and conclusions of law on July 23, 2004. The court found the parties were married from August 18, 1994 until June 15, 2003, the date of separation. The court labeled certain property as separate. The court then allocated various marital items. This division resulted in appellant receiving $4,852.48 worth of personal property and appellee receiving $6,285 worth of personal property. The court noted that an equal division would have been $5,568.74 each but that the division it imposed was equitable due to a disparity in income and earning ability and the relative assets and liabilities of the parties.
 {¶ 7} The court noted that appellant testified that he paid nearly $55,000 for business debts since separation. The court then stated that appellee invested all of her pension/IRA in the amount of $27,000 into the business and that she gave up her employment and operated the business without wages for almost three years. The court thus concluded that she would not be liable for any of the debts appellant paid since separation.
 {¶ 8} The court then found that there existed $45,381.67 in outstanding debts. The court determined that these would be divided equally in the amount of $22,690.83 each. Appellant would be responsible for paying the debts after appellee's share was deducted from other assets.
 {¶ 9} Next, the court divided appellant's pension and IRA as requested by appellant. That is, it was established that 20% of appellant's Weirton Steel Corporation pension of $1,625 per month was marital property. Appellee's half of the marital portion amounted to $160 per month currently or 10% of appellant's monthly benefit.
 {¶ 10} Appellant's IRA was valued at $192,596. The court found appellee's marital portion to be $39,822.80. The court then equally divided $528 in stock.
 {¶ 11} The court also made deductions for appellant's out of pocket payment at closing and appellee's receipt for a sale of business property and her benefit in the form of divorce attorney fees from the closing. Taking these deductions, adding the portion of appellant's IRA allocated to appellee and subtracting half of the outstanding debts which appellant would pay in the future, the court determined that appellant owed $15,395.97 to appellee.
 {¶ 12} Then, the court awarded appellee $400 per month in spousal support for two years or until death, remarriage or cohabitation with continuing jurisdiction. In supporting this decision, the court noted that appellant's net income from Social Security and his pension was $3,350 and that appellee's net income was $1,341 per month from her secretarial employment. The court then outlined the various factors it considered for awarding spousal support, such as that appellee is fifty-eight years old and she left employment in order to run their business for almost three years.
 {¶ 13} Appellant requested additional findings and conclusions on three matters. First, appellant complained that the court considered appellee's alleged contribution to the business from an IRA she cashed in. Second, he complained that the court did not consider his contributions to the business from his separate property in the form of Workers' Compensation and Social Security Disability settlements. Third, appellant asked the court to maintain jurisdiction due to unknown, outstanding debts.
 {¶ 14} The court supplemented its findings on August 11, 2004. The court basically stated that all monies contributed to the business were used to pay joint debt for the benefit of both parties. The court noted that the business operated at a loss and then sold for a loss; thus, neither could recover the money they contributed. The court then agreed to maintain jurisdiction for one year.
 {¶ 15} The final decree of divorce was entered August 26, 2004. This decree incorporated the findings and conclusions of the prior entries and restated the various holdings. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 16} Appellant's sole assignment of error contends:
 {¶ 17} "The trial court abused its discretion in dividing the marital assets and debts unequally and holding plaintiff owed defendant a balance of $15,296."
 {¶ 18} Initially, appellant notes that the court's entry found that appellant testified that he paid $54,844.85 in joint business debt since the date of separation. Appellant points out that his testimony actually reflected that he paid $56,584.85. (Tr. 75). He then wonders where the court got the figure it used in its entry.
 {¶ 19} It is likely the court arrived at its figure by listening to appellant's own closing argument where his counsel used the smaller figure. (Tr. 191). Appellant's counsel had previously noted that they filed an amended statement of the bills already paid due to additional payments made after the prior filing. The amended statement showed $56,584.84 as the proper figure, appellant testified to this figure, and appellee stipulated that appellant paid these amounts. Plaintiff's Exhibit 10. (Tr. 72, 75). It is thus likely the court used the prior filing, and had its mistake reinforced by appellant's counsel's misstatement in closing arguments.
 {¶ 20} Since appellant was allocated the entire portion of the previously paid joint business debt, this discrepancy would not actually change the result of the trial court's decision. However, it is relevant for our consideration of the total debt for which appellant was made responsible in comparison to appellee. Moreover, appellee stipulated to the figure contained in the amended exhibit. Thus, we shall proceed in our remaining analysis using $56,584.84 as the figure which the trial court refused to divide among the parties.
 {¶ 21} Next, appellant states that by failing to allocate half or at least a portion of the prepaid joint business debt to appellee, the court unjustifiably made him responsible for more than 77% of the total joint business debt. He contends that the court failed to provide a reasonable explanation for its failure to equally allocate this debt.
 {¶ 22} Pursuant to R.C. 3105.171(C)(1), the division of marital property shall be equal unless an equal division of marital property would be inequitable. As such, an equal division of marital assets and liabilities is the starting point. Jendrusik v. Jendrusik (Dec. 17, 2001), 7th Dist. No. 00BA54. Equitable does not mean equal. Clark v.Clark, 7th Dist. No. 03NO308, 2004-Ohio-1577, ¶ 30 (where the difference in property division was only $1,500).
 {¶ 23} The trial court must provide sufficient written findings in the property division order to enable the reviewing court to adequately evaluate its order. Id. See, also, Kaechele v. Kaechele (1988),35 Ohio St.3d 93, ¶ 2 of syllabus. Generally, the court need not explain its reasoning in great detail. Davis v. Davis (Dec. 26, 2001), 7th Dist. No. 2000CO31. Yet, if the court deviates so significantly from an equal division, the court should set forth with specificity why its division is equitable or the court runs the risk of reversal. McClelland v.McClelland (June 14, 2001), 7th Dist. No. 00JE21.
 {¶ 24} A trial court has broad discretion in dividing property.Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401. We shall not reverse absent an abuse of discretion, meaning a decision that is unreasonable, unconscionable or arbitrary. Id.
 {¶ 25} In making an equitable division of marital property, R.C.3105.171(C) provides that the trial court shall consider all relevant factors, including the following: (1) the duration of the marriage; (2) the assets and liabilities of the spouses; (3) the desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage; (4) the liquidity of the property to be distributed; (5) the economic desirability of retaining intact an asset or an interest in an asset; (6) the tax consequences of the property division upon the respective awards to be made to each spouse; (7) the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property; (8) any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; and (9) any other factor the court expressly finds to be relevant and equitable. R.C. 3105.171(F).
 {¶ 26} It was stipulated that appellant paid $56,584.85 in joint business debt between the date of separation (which was later determined to be the end of the marriage) and the date of the divorce hearing. Appellant urged that appellee should be responsible for half of these debts, which is $28,292.42. However, the trial court decided that appellee would not be liable for any of this debt.
 {¶ 27} It is noted that the original entry seemed to rely on her $27,000 contribution of an IRA that she cashed out. However, the supplemental findings revealed that the court was not considering this contribution as a reason for refusing to allocate any of the $56,584.85 in debt to her. The court likewise did not attribute appellant's separate contributions to him. Specifically, the court stated in the supplemental entry that the amounts contributed by each of the parties were lost and cannot be recouped now. This applied to appellant's contributions as well as those of appellee.
 {¶ 28} The reasoning the trial court gave for refusing to make appellee liable for half of the debts appellant had thus far paid was that appellee has no pension left and she gave up her employment to work for the business without receiving wages for almost three years. The question appellant presents is basically whether appellee's management of the business for three years without pay after quitting her employment justified the court's decision to exclude her from repaying part of the $56,584.85 paid by appellant prior to separation.
 {¶ 29} Regarding the lack of wages, appellee asks us to assume she should have made at least $350 a week for 52 weeks resulting in $18,200 per year times three years totaling $54,600. Appellee admitted that she did withdraw household spending money from the business. Appellant claimed that appellee took money from the business whenever she wanted amounting to a salary. However, the trial court was permitted to find appellant's claims an exaggeration and to find that appellee's admission only established minimal withdrawals not equal to a decent wage and that were for the benefit of both parties. Besides the lack of pay, she gave up a job with potential and left a blank on her much needed resume where she now only has a failed and lost business to acclaim as her immediate past employment.
 {¶ 30} We must state here that we do not review a particular division of assets or debts in isolation. McClelland, 7th Dist. No. 00JE21. Rather, we view the entire property division in its entirety. Id. Thus, we note the fact that the court equally divided the $45,381.67 in outstanding joint business debt and any further debt yet to come to light.
 {¶ 31} We recognize that in dividing other marital assets, the court distributed property to appellant worth $1,432.52 less than the property awarded to appellee. Appellant does not take issue with this division. Important to our analysis is where the court advised this aspect of the division was equitable due to disparity of income and earning capacity as well as the relative assets and liabilities.
 {¶ 32} In applying the factors in R.C. 3105.171(C), we first note that the duration of the marriage here is approximately nine years. R.C.3105.171(C)(1). We then consider the assets and liabilities of the spouses under R.C. 3105.171(C)(2). Appellant has a residence worth over $100,000 that was his separate property. He also has a pension paying him monthly and an IRA with over $100,000 remaining. Appellee has 10% of appellant's pension, no IRA, and no home. Appellant is left responsible for $45,381.67 in joint business debt, but appellee's share of this debt was deducted from other parts of the division. Appellant has taxes and penalties to pay on a $30,000 IRA seizure performed by the IRS due to delinquent payroll taxes.
 {¶ 33} Appellee notes the disparity in income, which is not an asset under division two, but could be considered under the catch-all factor. It is R.C. 3105.171(F)(9), "any other factor the court expressly finds to be relevant and equitable," that the trial court relied on herein.
 {¶ 34} In McClelland, we reversed the trial court's judgment, finding nothing to justify a division of marital property in a 73%/27% split. Here, we have the additional factor, relied upon by the trial court, that appellee gave up her employment to run the parties' joint business. Thus, this case is distinguishable.
 {¶ 35} This court has also reviewed a case where the trial court awarded the husband 48% of the assets (approximately $67,000) and allocated 67% of the debt to him (approximately $40,000). Sicilia v.Sicilia, 7th Dist. No. 01CO57, 2002-Ohio-6893 (also awarding wife $2,000 per month in spousal support for four years and child support). We affirmed stating that the trial court was in the best position to assess the parties' financial condition and that he was the only party who could pay the debts. Id. at ¶ 14.
 {¶ 36} In the case before us, the trial court was entitled to consider the fact that appellee quit her regular job for the parties' joint business venture. Moreover, the court found a disparity in income and assets. A disparity in income and an accompanying inability to pay debts is an acceptable factor to consider. For the foregoing reasons, we shall not substitute our judgment for that of the trial court on this matter.
 {¶ 37} Appellant also makes an argument that the court should have valued his IRA after reducing it by $30,000 since the IRS seized this amount due to joint debts. However, this $30,000 in debt was listed in appellant's schedule of the debts he already paid. Thus, it was considered by the trial court and disposed of as analyzed above. In fact, the end date of the marriage was set in June 2003, before the IRS seized the funds, and marital property is to be valued closer in time to the date the marriage ended. Most tellingly, this is not the method of calculation used by appellant's own counsel in closing or in his exhibits. As aforementioned, the seizure was already considered in the property division and allocation of debts. As such, this argument is without merit.
 {¶ 38} Lastly, appellant argues that many of the debts were the result of appellee's mismanagement. He notes that under R.C. 3105.171(E)(3), the court can effect a property division strongly in favor of one spouse when the other spouse engages in financial misconduct. He thus concludes that at least the division should have been equal rather than heavily skewed in favor of appellee. Basically, he argues that even if the court's allocation of over 77% of the debt to him is otherwise valid, appellee's mismanagement cancels out the reasons favoring the unequal division.
 {¶ 39} This argument is premised upon credibility determinations which we shall not disturb. For instance, the court believed the testimony that appellant consented to payment of certain expenses for appellee's son out of the business account since her son was working full-time for no wages. Likewise, as for his claim that the penalties on the taxes were appellee's fault because she never told him of the business's problems, the trial court could believe appellee's claim that appellant knew about the delinquent taxes at a time when penalties could be avoided but refused to put more money into the business. This argument is overruled.
 {¶ 40} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.