[Cite as *Kachmar v. Kachmar*, 2010-Ohio-1311.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| FRANCES E. KACHMAR, | ) | |
| | ) | CASE NO. 08 MA 90 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| STEPHEN KACHMAR, Jr., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
Court, Domestic Relations Division,
Case No. 05 DR 575.


JUDGMENT:     Affirmed in Part, Reversed in Part
and Remanded.


APPEARANCES:
For Plaintiff-Appellee:     Attorney Matthew Giannini
1040 South Common Place
Suite 200
Youngstown, OH 44514


For Defendant-Appellant:     Attorney Francesca T. Carinci
Suite 904-911
Sinclair Building
100 North Fourth Street
Steubenville, OH 43952


JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite


Dated: March 26, 2010

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this Court. Defendant-appellant, Stephen Kachmar, appeals the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division that granted a divorce between him and plaintiff-appellee, Frances Kachmar. On appeal, Stephen challenges several aspects of the trial court's property division and spousal support determinations. He also challenges the trial court's decision to award attorney fees to Frances.

{¶2} Upon review, Stephen's fifth and sixth assignments of error are meritorious, in part. The trial court erred by ordering Stephen to name Frances as an irrevocable beneficiary of a unnamed $25,000.00 life insurance policy, because there is no evidence in the record demonstrating the existence of such a policy. In addition, the trial court abused its discretion by using inconsistent dates for the valuation of marital property. Stephen's remaining assignments of error are meritless. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

### Facts

{¶3} The Kachmars married on September 21, 1973. On August 30, 2005, Frances moved out of the marital home. On September 8, 2005, Frances filed a complaint for divorce in which she requested, among other things, an equitable division of the marital property, attorney fees and spousal support. At the time the complaint was filed, all of the Kachmars' children were emancipated. Stephen was employed by Delphi Packard Electric Systems earning approximately $76,164.00 per year as a toolmaker. Frances was employed by the Youngstown City Schools earning approximately $47,872.00 per year as a teacher.

{¶4} On October 18, 2005, the magistrate issued temporary orders, which, among other things, ordered Stephen to pay Frances temporary spousal in the amount of $500.00 per month plus processing fee, effective September 8, 2005. On April 6, 2006, a judgment entry was issued by the court wherein the parties stipulated that the temporary spousal support would terminate as of February 14, 2006.

{¶5} Initially, a full divorce hearing was scheduled for September 18, 2006. Prior to trial, the parties indicated they had reached a settlement on all issues. That agreement was then dictated into the record. However, when it came time to reduce that agreement to writing the parties apparently had some discord. As a result of that, and because the settlement failed to address all necessary issues, the trial court vacated the settlement agreement that had been read into the record.

{¶6} The case was subsequently set for final trial several times, but was continued several times because the trial judge disqualified herself, and because Stephen went through several different attorneys. The case finally came for trial before a visiting judge, beginning on December 27, 2007. At the start of trial, the court stated the attorneys had informed it there was "substantial agreement" on most issues, but there remained some disagreement about whether to consider Stephen's Social Security benefits when making the property division. Stephen then personally argued to the court that his Social Security benefits should not be considered. Both counsel and the court tried to explain to Stephen that the law in Ohio states otherwise. Nonetheless, Stephen continued to argue at length about this issue. Stephen then rejected an offer by Frances to split all assets and the pensions 50/50, with his Social Security values used to offset Frances' STRS pension. Stephen continued to personally argue with the court, and in the end decided he wanted to litigate all issues in the case, despite the fact that most issues had been settled prior to trial. The court subsequently warned Stephen that if he chose to do this, he could be ordered to pay Frances's attorney's fees for the time it took to litigate the unmeritorious issues.

{¶7} The court then proceeded to hear the whole case. First, Stephen was called as a witness by Frances and stated he is employed full-time but was on sick leave for part of 2006 and 2007. Because of that his income was only $40,945.00 for 2006. However he earned $90,000.00 in 2005 and $85,903.00 in 2004. He testified he would earn between $60,000.00 and $70,000.00 during calendar year 2007. Stephen also testified about debts the parties' incurred both prior to and after their separation. He testified about the parties' four vehicles, as well as their various checking and savings

accounts. He said the parties own a parcel of real estate in Boardman (the Boardman home). Stephen testified there was no mortgage debt associated with the Boardman home, and agreed the entire value of that property is marital. He requested that the Boardman home be sold, and that it be listed with Klacik Realty for $69,000.00 for one year, after which time it be auctioned. He testified he currently lives in the Boardman home, and has been paying real estate taxes and insurance on it since the parties separated. He admitted he had not paid any rent to Frances during that time. He stated that Frances held title to another parcel of real estate, which had been deeded to her by her mother ("the Struthers home").

{¶8} Stephen testified about his Delphi pension and personal savings plan, and Frances's IRA account. He stated he has a full life insurance policy, in his name only, through Nationwide, which had a cash surrender value of $5,174.57 as of July 1, 2006. He stated he purchased this policy prior to the marriage, but had no information about the value of the policy on the date the parties married. He stated Frances has a whole life insurance policy through First Ladies' Catholic Slovak Association. Stephen also testified that the parties purchased approximately $2,000.00 in United States Savings Bonds during the marriage.

{¶9} Stephen described his mental and physical conditions. He said he was on sick leave for several months during 2007 because of a broken left hand. He stated he also suffers from a pinched nerve in the left hand, rhabdomyalysis and neuropathy in his legs, high blood pressure and high cholesterol. He stated he is stressed and anxiety-ridden over the divorce. He alleged that Frances is a "hypochondriac" and is "in fairly good shape if she would lose some weight."

{¶10} Stephen testified the parties enjoyed a "normal standard of living" throughout the marriage. They took two or three vacations to Virginia Beach, and were able to assist three out of the four children with college tuition and expenses. He stated he has a Bachelor's degree. He said he understood the tax ramifications of spousal support. Throughout the hearing, Stephen was generally argumentative and uncooperative, and the court threatened him with a contempt sanction several times.

{¶11} Frances then testified. She confirmed that her mother gifted her the Struthers home, and said she has been residing there since the parties' separated. Frances also requested the Boardman home to be sold. She stated that Stephen had been living in the home since the separation and that his girlfriend had subsequently moved there also. She agreed Stephen had been paying the insurance and real estate taxes on that residence since the parties separated.

{¶12} Frances testified about her various checking and savings accounts, and about her credit cards debts, both of those accrued during and after the separation. She stated she has an IRA with National City Bank and an annuity with Metlife, and that the parties have US Savings Bonds. Frances presented a document from Pension Evaluators that determined the fair market value of Stephen's Social Security Benefits was $202,781.14 as of March 20, 2006. The marital portion thereof was valued at $190,321.25. She also presented an evaluation of her STRS pension, which determined its fair market value as of March 20, 2006 was $290,423.81, with a marital portion valued at $274,651.47. She also presented evaluations of Stephen's pension, IRAs, stocks, and personal savings plan.

{¶13} With regard to life insurance, she confirmed the existence and value of her term life policy and agreed Stephen has a $5,000.00 full life policy with Nationwide with a cash surrender value of $5,174.57 as of June 12, 2006.

{¶14} Frances testified she has been employed as a teacher with the Youngstown City Schools for twenty-six years, and that she has tenure and a permanent certificate. She stated she earned $49,413.77 during tax year 2006. She presented her contract with the school district for the 2006-2007 school year showing that she will earn $57,548.00. Frances also presented an affidavit showing her expenses.

{¶15} As far as her mental condition is concerned, Frances testified she is stressed, has been in counseling for the past three to four years, and has been diagnosed with moderate depression. She stated she is no longer able to participate in a lot of the activities she once did, like church functions and volunteer work. She stated she sees her family physician every two to three months and that she suffers from

borderline diabetes part 2, asthma, high blood pressure, high cholesterol, and osteoarthritis in her knees and lower back. In the past she was forced to use a walker because of these conditions, and testified that she currently uses a cane to ambulate. She stated she participates in physical therapy and is treated regularly by two chiropractors.

{¶16} As far as the parties' standard of living, she generally agreed with Stephen that they enjoyed a middle class standard of living during the marriage. Frances stated she earned a Bachelor's degree and a Master's degree during the marriage. She stated Stephen has a Bachelor's degree in Mathematics, a degree in engineering and "almost" a degree in computer science. She stated his education was financed through grants and through Stephen's employer. On cross, Frances admitted her employment contract with Youngstown School District does not preclude her from taking summer employment.

{¶17} Stephen's direct testimony was then presented. He did not present any exhibits of his own, and did not contest the property valuations in Frances's exhibits. Likewise, Stephen did not contest most of Frances's testimony, with the following exceptions. He stated that two of the U.S. Savings Bonds actually belonged to one of their sons. Frances later agreed with this testimony. Stephen also alleged that the stocks Frances testified about no longer have any value. He testified that the Putnam IRA no longer exists because he consolidated it with one of his UBS accounts. Further, he insisted the parties used marital assets to make improvements on the Struthers home. In addition, Stephen agreed he was eligible to receive Social Security Benefits upon retirement, but alleged that the values presented by Frances were incorrect. However, he failed to present his own valuation of his Social Security benefits.

{¶18} After evaluating the evidence, the trial court made some preliminary rulings from the bench. The court then asked the parties to submit written closing arguments, and stated it would issue a final judgment entry after reviewing them. Both parties then submitted proposed findings of fact and conclusions of law.

{¶19} In the final decree, the trial court granted the parties a divorce based on their living separate and apart for over one year. The court set the end-date of the

marriage as August 30, 2005, the date the parties' separated. The court awarded Frances 60% of the marital assets, including Stephen's pensions. Stephen was awarded 40% of Frances's STRS pension, offset by his Social Security Benefits. Frances was awarded the Pontiac Grand Am, and the other three vehicles were ordered sold. The court awarded the Boardman home to Stephen, and ordered Stephen to pay Frances 60% of the home's appraised value. Frances was awarded the Struthers home gifted to her by her mother, with no offset to Stephen for its value. The court ordered that each party shall be solely responsible for their respective credit card debt that was incurred after the separation. With regard to the remaining marital credit card debt, which totaled $3,000, the court ordered that Frances shall be responsible for 40% and Stephen 60%.

{¶20} The court ordered that Stephen shall retain free and clear of any claim from Frances, the ownership in the Nationwide Life Insurance Policy, and that Frances shall retain free and clear of any claim of Stephen her life insurance policy with the First Ladies' Catholic Slovak Association policy. However, at the end of the decree, the court also ordered that "[Stephen] shall name [Frances] as an irrevocable beneficiary of a Twenty Five Thousand Dollar ($25,000.00) life insurance policy currently owned by [Stephen] with verification provided to this court." The court did not identify this policy by name.

{¶21} Finally, the court ordered Stephen to pay $100.00, plus processing fee, per month, in spousal support to Frances, subject to termination upon the death of either party, remarriage by Frances, or Frances cohabiting with a non-relative male. The court retained jurisdiction over spousal support. Finally, the court ordered Stephen to pay Frances's attorney fees for the two days of trial. The court stated it would hold a later hearing to present evidence on the attorney fee issue.

{¶22} This timely appeal followed. Stephen requested a stay with the trial court, which was denied. He subsequently requested a stay with this court, to which we responded with an order specifying the following:

{¶23} "(1) A stay of the $100 per month in spousal support is denied;

{¶24} "(2) A stay of that part of the judgment entry dealing with the sale of the

marital home is granted. Defendant-appellant may continue to reside in the home and is responsible for taxes, insurance and repair. He is not to encumber the home with any mortgage;"

{¶25} "(3) That part of the judgment entry regarding the auctioning of certain vehicles titled in the name of appellant is stayed.

{¶26} "(4) All other provisions regarding debt obligations are not stayed."

{¶27} The trial court subsequently issued Qualified Domestic Relations Orders (QDRO's) for Stephen's Putnam IRA, his UBS IRA, and his UBS Resource Management Account which used December 31, 2005 as the valuation date. The court also issued a QDRO for France's STRS pension, which used August 20, 2005 as the valuation date. QDRO's relating to Stephen's Delphi personal savings plan and Delphi pension listed the valuation date for these assets as December 31, 2005.

{¶28} On March 11, 2009 we issued a limited remand to the trial court so that it could rule on the issue of attorney fees. This occurred because the final decree awarded attorney fees to Frances, but failed to calculate the exact amount of the attorney fee award, instead relegating that determination for hearing on a later date. We ruled that absent a determination of the amount of the attorney fee award, the final decree did not constitute a final appealable order.

{¶29} The trial court held a hearing on attorney fees on April 2, 2009. In an opening statement, Frances's attorney, Matthew Giannini, stated he was requesting attorney fees because Stephen essentially forced several days of trial, and litigated many unnecessary issues due to his untenable position about how his Social Security benefits should be considered. Attorney Giannini was then called as witness and testified he represented Frances at trial, and that he was requesting attorney fees for trial preparation, the two days of trial, and the preparation of findings of fact and conclusions of law. He stated that Frances had not yet paid those fees. He presented a current bill for his services as an exhibit. He testified he has practiced law in the State of Ohio since 1978, that 60-70% of his cases involve family law, and that he charges $200 per hour. Attorney Giannini testified that he had pre-trial discussions with each of Stephen's four

successive attorneys about the issue of Stephen's Social Security benefits. Attorney Giannini said that prior to the December 2007 trial, Frances's then-attorney, Anthony Vivo, indicated that the issue had been resolved.

{¶30} Frances then called Attorney George Briach, who testified he has been practicing in the State of Ohio for 25 years, that his practice consists of approximately 75% family law cases, and that he charges $200 per hour. He felt that $200 per hour is reasonable for a divorce case in Mahoning County and stated he knows attorneys who charge even more. Overall, Attorney Briach testified that the amount of work done and fees charged by Attorney Giannini in this case was reasonable. Frances was then called by Stephen as a witness, and testified about her income from work and spousal support, and her ability to work. In the end, Attorney Giannini requested the court order Stephen pay $3,600 in attorney fees: 14 hours for trial preparation and trial, and 4 hours for preparation of the findings of fact and conclusions of law, at $200 per hour.

{¶31} In an April 13, 2009 judgment entry, the trial court ordered Stephen to pay Frances the sum of $3,600.00 as requested. The court found that the amount of attorney fees is "necessary and reasonable under the facts and the totality of the circumstances in this case," and that they were "necessitated as a direct result of Defendant's refusal to negotiate in good faith in lieu of the litigation of unmeritorious issues in the proceedings conducted on 12/27/07, 12/28/07 and the preparation of Findings of Fact and Conclusions of Law resulting therefrom."

{¶32} On April 22, 2009, Stephen filed a separate notice of appeal from that judgment, which was styled 09-MA-75. On May 9, 2009, we merged Case Number 09-MA-75 with the present case, 08-MA-90, and dismissed 09-MA-75 for record purposes only.

### Property Division

{¶33} Four of Stephen's seven assignments of error relate to the trial court's division of marital property. We will address them first because the trial court must make its property division determination prior to awarding spousal support, and any change can impact spousal support. R.C. 3105.18(B).

{¶34} A domestic relations court is required, when granting a divorce, to "determine what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). Then the court shall proceed to divide the marital property in an equitable manner. Id. "Pursuant to R.C. 3105.171(C)(1), the division of marital property shall be equal unless an equal division of marital property would be inequitable. As such, an equal division of marital assets and liabilities is the starting point." *Boso v. Boso*, 7th Dist. No. 04JA26, 2005-Ohio-2937, at ¶22. Equitable does not necessarily mean equal. Id.

{¶35} "[T]he court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of 'during the marriage." R.C. 3105.171(G). Further, "[i]n allocating property between the parties to a divorce * * * the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197, at paragraph two of the syllabus.

{¶36} Pursuant to R.C. 3105.171(F), as effective on the date of the divorce decree, a court must consider the following factors when dividing the marital property: (1) the duration of the marriage; (2) the assets and liabilities of the spouses; (3) the desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage; (4) the liquidity of the property to be distributed; (5) the economic desirability of retaining intact an asset or an interest in an asset; (6) the tax consequences of the property division upon the respective awards to be made to each spouse; (7) the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property; (8) any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; (9) any other factor that the court expressly finds to be relevant and equitable. Former R.C. 3105.171(F).

{¶37} "Since a trial court has broad discretion in the allocation of marital assets, its judgment will not be disturbed absent an abuse of discretion." *Neville v. Neville,* 99 Ohio

St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, at ¶5. When reviewing a trial court's decision for an abuse of discretion, this court cannot simply substitute its judgment for that of the trial court. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

**{¶38}** Further, "[a] reviewing court examines the overall equity of the division of marital assets and debt, rather than engage in a detailed analysis of every jot and tittle of marital property: '[I]t is not this court's role to conduct an item by item review of the marital assets and liabilities. Our review is limited to the equity, i.e., fairness * * *.'" *Hiscox v. Hiscox*, 7th Dist. No. 07CO7, 2008-Ohio-5209, at ¶53, quoting *Fergus v. Fergus* (1997), 117 Ohio App.3d 432, 438, 690 N.E.2d 949.

*Dates Used for the Valuation of Marital Property*

**{¶39}** In his sixth assignment of error, Stephen asserts:

**{¶40}** "The court did not make a determination of what dates constitute the marriage and inconsistent dates were used for determining valuation of assets."

**{¶41}** Stephen is incorrect that the trial court failed to determine an end date for the marriage. Paragraph two of the "Conclusions of Law and Order" contained within the divorce decree states: "The time of the marriage was from September 21, 1973, to August 30, 2005." August 30, 2005 is the date the parties separated.

**{¶42}** The trial court did, however, use inconsistent dates for the division of marital property. The court used August 30, 2005 to divide some of the marital assets, stating:

**{¶43}** "The Plaintiff has a pension with the State of Ohio State Teacher's Retirement System which the Defendant shall be entitled to forty percent (40%) offset by his Social Security Benefits. The time of coverture for this and all pensions shall be September 21, 1973, through *August 30, 2005*. In addition, the Plaintiff shall be entitled to sixty percent (60%) of the Husband's pensions with Delphi and Kurtz Tool & Dye and both UBS accounts. Finally, the Plaintiff shall be entitled to sixty percent (60%) of the Personal Savings Plan for the aforementioned coverture dates." (emphasis added.)

{¶44} Subsequently, the court used a different date for the division of other assets, stating:

{¶45} "Plaintiff shall receive sixty percent (60%) of the Putnam Account, the Delphi Personal Savings Plan and the Bonds Service. Plaintiff shall retain his checking and/or savings accounts. The amounts that were in the account on *December 31, 2005*, shall be equalized and divided with Plaintiff receiving sixty percent (60%) and Defendant receiving forty percent (40%). * * *" (emphasis added.)

{¶46} There are two problems with the above paragraph. First, it is unclear from that language which account or accounts should be divided as of December 31, 2005. Second, and most importantly, it is error to use a date *after* the end of the marriage to divide marital assets.

{¶47} "As a general matter, a trial court should consistently apply the same set of dates when evaluating marital property that is subject to division and distribution in a divorce proceeding." *Angles v. Angles* (Sept. 15, 2000), 5th Dist. No. 00CA1, at *4 (internal citations omitted). If the circumstances of a given case so require, the trial court may choose different dates for valuation purposes so long as the court adequately explains its reasons, and its decision does not constitute an abuse of discretion. Id.; see, also, R.C. 3105.171(G); *Hyslop v. Hyslop*, 6th Dist. No. WD 01-059, 2002-Ohio-4656, at ¶36. However, the trial court abuses its discretion when it chooses a division date that occurs after the end of the marriage. See *Crowder v. Crowder* (Aug. 5, 1999), 10th Dist. No. 98AP-1124. This is so because "[t]he duration of the marriage is critical in distinguishing marital, separate, and post-separation assets and determining appropriate dates for valuation." *Harris v. Harris*, 11th Dist. No. 2002-A-81, 2003-Ohio-5350, at ¶10.

{¶48} For example, in *Crowder*, the court held that the trial court abused its discretion by failing to value and divide a marital asset as of the date the court chose as the de facto termination of the marriage, instead using the later final hearing date as the division date. Id. at *2-3. Similarly, the trial court here designated the parties' separation date, August 30, 2005, as the date the marriage terminated, yet used December 31, 2005, as the division date for some of the marital property. This constitutes an abuse of

discretion and the trial court erred by using a date falling after the termination of the marriage as the division date for some of the marital property.

**{¶49}** Frances argues that any error regarding the use of inconsistent dates was rendered moot by the trial court's subsequent determination that, for purposes of uniformity, the valuation for all marital assets, including retirement, would be the date of marriage through December 31, 2005. Frances points to the fact that the QDRO's issued by the trial court against each parties' individual retirement plans used December 31, 2005 as the division date.

**{¶50}** A review of the QDRO's in this case reveals that the trial court did use December 31, 2005 as the division date for the Putnam Account, the UBS Account and Stephen's Delphi pension. However, this does not render Stephen's argument moot, because the division dates in those QDRO's conflicts with the trial court's stated division date for those assets in the final decree. A QDRO is "merely an order in aid of execution on the property division ordered in the divorce decree." *Hale v. Hale*, 2d Dist. No. 21402, 2007-Ohio-867, at ¶14. "If the QDRO [ ] is inconsistent with the decree, the trial court lacks jurisdiction to issue the same, and it is void." Id.

**{¶51}** Thus, we must look only to the dates used in the final divorce decree when deciding this assignment of error, not the dates used in the QDRO's. As discussed above, in the final decree the trial court inexplicably used inconsistent dates, some of which fell after the end-date of the marriage, when dividing the marital property. On remand, the trial court must divide marital assets as of a date falling within the duration of the marriage. Moreover, if different dates are used for some of the assets, the trial court must adequately give its reasons for doing so. Accordingly, Stephen's sixth assignment of error is meritorious.

*Division of Marital Assets and Liabilities*

**{¶52}** In his third assignment of error Stephen asserts:

**{¶53}** "The court erred in dividing the marital assets on a 60/40 division."

**{¶54}** Stephen argues that the trial court failed to consider the factors contained in R.C. 3105.171(F) when dividing the marital property and that it its decision to depart from

an equal distribution was an abuse of discretion. Frances counters that there is no presumption that a trial court divide the marital property equally. She argues that the unequal split in this case was reasonable based on the evidence presented at trial. However, Frances does not address Stephen's argument that the trial court failed to properly consider the R.C. 3105.171(F) factors.

{¶55} As explained above, a trial court must consider the factors contained in R.C. 3105.171(F) when dividing the marital property. See ¶36 supra. Here the trial court mistakenly applied the R.C. 3105.18(C) *spousal support* factors when making its property division ruling. When discussing its property division determination, the court considered and analyzed at length the parties' relative incomes; the age and physical mental and emotional conditions of the parties; the parties' retirement benefits; the duration of the marriage; the fact that all children were emancipated; the parties' standard of living and education levels; the relative assets and liabilities; the contribution of each party to the education and training of the other; the time and expense necessary for potential retraining of the spouse; and the tax consequences of ordering spousal support. These are precisely the factors a court must consider when awarding spousal support pursuant to R.C. 3105.18(C). Notably, the trial court does not even cite to the R.C. 3105.171(F) property division factors when making its property division determination.

{¶56} Although this constituted error on the part of the trial court, we conclude this error was harmless as the record reflects the trial court adequately considered the proper factors. See, e.g., *Campana v. Campana*, 7th Dist. No. 08MA88, 2009-Ohio-796, at ¶56 (concluding that the trial court's application of the child custody modification best interest factors instead of the visitation modification best interest factors was harmless error where the court's decision evidenced it considered the proper factors.)

{¶57} Here the court considered the long duration of the marriage, and the assets and liabilities of the parties pursuant to R.C. 3105.171(F)(1)-(2). The court discussed the impact of the liquidity of various assets pursuant to R.C. 3105.171(F)(4). The court considered the desirability of retaining an asset intact, pursuant to R.C. 3105.171(F)(5), when it decided to award the marital home to Stephen, instead of ordering the home sold.

The court also considered the tax ramifications of the property division pursuant to section R.C. 3105.171(F)(6). The court discussed the costs of sale of the marital home and the automobiles, pursuant to R.C. 3105.171(F)(7). The court clearly considered "any other factors that the court expressly finds to be relevant and equitable," pursuant to R.C. 3105.171(F)(9), when it applied the R.C. 3105.18(C) spousal support factors. R.C. 3105.171(F)(3) does not apply to this case.

{¶58} Further, we conclude the trial court's overall property division determination was not an abuse of discretion. The trial court awarded Frances 60% of the marital assets and 40% of the marital debt. The court chose to depart from an equal split of marital assets and liabilities for several reasons, namely, the long duration of the marriage, Frances's declining physical and mental health, and the fact that Stephen had a higher earning capacity. At trial, the court summarized its rationale as follows:

{¶59} "With respect to the asset division, I am going to do a 60/40 here. I am going to give Mrs. Kachmar 60 percent of the marital assets and Mr. Kachmar 40 percent of the marital assets. I am not going to do 50/50. I thought about that and what it appears to me as though her, while, she has a good job and has some financial future, her medical conditions are serious and could be debilitating. Furthermore, his history of making $90,000 in some years indicates that he is either underemployed, or maybe they are just having hard times out there, but his ability to make substantially more than her is there and he will continue to have that. He is 56 years old and continues to work at Delphi and has multiple degrees which qualify him to do a great many things. Certainly she is educated as well and has a Master's degree as she has testified, and I accept that. And she is a competent, qualified person as well, but she has medical problems that could result in her inability to work. It is a 34-year marriage, a moderate standard of living. Her ability to accumulate just will not be as great as his and thus the 60/40 division would be equitable in my judgment."

{¶60} The trial court's decision is not unreasonable, arbitrary or unconscionable. It is supported by the evidence in the record. We reject Stephen's argument that the trial court made a more favorable property division to Frances in order to punish Stephen for

his antics during trial. He points to several statements made by the trial court which he believes demonstrate the court was prejudiced against him, for example, when the court stated: "Okay. I think we have done anything and everything with regard to this case on the record for the Plaintiff."

{¶61} On its face, that statement is troubling. However, when put in the context of the trial as a whole, we cannot conclude that this statement evinces bias on the part of the court. Prior to trial, an agreement had been reached with respect to most issues, but at the start of the hearing, Stephen refused to settle and forced unnecessary litigation. During trial, Stephen presented no documentary evidence and did not contest most of Frances's documentary evidence or testimony. Thus, the trial court's statement that it had done "anything and everything" for Frances is less problematic when viewed in this context.

{¶62} Stephen also takes issue with the fact that there was no medical evidence in the record or testimony of doctors to indicate that Frances had any potentially debilitating illnesses. However, as Frances points out in her appellate brief, her testimony regarding her various medical conditions does constitute evidence that the court may consider. In deciding whether to believe that testimony, the trial court made a credibility determination, to which, as the reviewing court, we will defer. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273 (stating that "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.")

{¶63} Thus, we conclude the trial court did not abuse its discretion when dividing the marital property. Perhaps we would not have reached the same decision however, under our deferential abuse-of-discretion standard of review, we must refrain from substituting our judgment for that of the trial court. Accordingly, Stephen's third assignment of error is meritless.

*The Disposition of the Marital Residence*

{¶64} In his fourth assignment of error, Stephen asserts:

{¶65} "The court erred and abused its discretion by ignoring the request and agreements of the parties and ordering a disposition of assets contrary to what both parties agreed and requested in their testimony."

{¶66} Stephen claims the trial court abused its discretion with respect to its disposition of the Boardman home. On appeal, Stephen mistakenly concludes that the trial court ordered the marital home sold in the final decree. He concedes that this was his desired outcome, since he requested the home be sold during trial. Nonetheless, as Stephen perceives it, the "abuse of discretion" stems from the fact that at the hearing, the trial court ruled that Stephen should retain the home, while in the final decree, the court purportedly "reversed itself" and ordered the home sold.

{¶67} However, a review of both the transcript and the decree reveals the trial court awarded the Boardman home to Stephen, and ordered Stephen to pay 60% of the home's appraised value to Frances. Stephen's confusion perhaps stems from the fact that the trial court, within the findings of fact section of the final decree, noted that both parties requested the home be sold. Regardless, we conclude that the trial court did not abuse its discretion in awarding the Boardman home to Stephen.

{¶68} There is no requirement that one or both parties must request a particular disposition of a marital asset before the trial court can make a disposition. *Snyder v. Snyder* (Dec. 22, 2000), 11th Dist. No. 99-G-2230, at *2. Likewise, the trial court is not bound to accept the parties' agreement regarding the disposition of a marital asset. See, e.g., *Szerlip v. Szerlip* (1998), 129 Ohio App.3d 506, 513, 718 N.E.2d 473 (noting that "R.C. 3105.171(F) clearly indicates that private agreements between parties concerning the division of marital assets are not binding upon the trial court when the court is dividing marital property equitably.") Rather, a trial court must look to the property division factors and make an overall determination of what is equitable based on the facts and circumstances of a given case. *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 221-222, 9 OBR 529, 459 N.E.2d 896.

{¶69} Further, "[i]n determining whether the trial court abused its discretion, a reviewing court cannot examine the valuation and division of a particular marital asset or

liability in isolation; rather, the reviewing court must view the property division in its entirety, consider the totality of the circumstances, and determine whether the property division reflects an unreasonable, arbitrary or unconscionable attitude on the part of the domestic relations court." *Jelen v. Jelen* (1993), 86 Ohio App.3d 199, 203, citing *Briganti*; *Koegel v. Koegel* (1982), 69 Ohio St.2d 355, 23 O.O.3d 320, 432 N.E.2d 206; and *Blakemore*.

{¶70} The trial court's decision to award the home to Stephen, notwithstanding the parties' requests to the contrary, was reasonable based on the facts and circumstances of this case. Stephen had been living in the home since the parties' separated in August 2005. He had maintained the home, paid the real estate taxes and insurance, and even moved his girlfriend in with him. Stephen's fourth assignment of error is meritless.

*Clerical Errors in the Final Decree*

{¶71} In his fifth assignment of error Stephen asserts:

{¶72} "The court's order of April 22, 2008 contained numerous clerical errors, which directly affected the division of assets and do not agree or coincide with the documents entered into evidence by the parties."

{¶73} Stephen argues that the final decree misstates several findings of fact: (1) that Frances requested the division date for all marital property to be December 31, 2005; (2) that the parties requested Basinger Auctioneers when they really requested Romans Auctioneers; (3) that Frances requested the court order she receive credit for one half of the money withdrawn from Stephen's pension and that she not be held responsible for the children's college educations; (4) that Stephen held a Master's degree when he really held only a Bachelor's degree; (5) the amount of the marital portion of Frances's STRS pension.

{¶74} Civ.R. 60(A) provides a mechanism for apprising the trial court about clerical errors in judgments:

{¶75} "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the

court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court." Civ.R. 60(A).

**{¶76}** Stephen never made a Civ.R. 60(A) motion to the trial court or requested leave of this court to file a Civ.R. 60(A) motion. Moreover, Stephen has failed to show how these errors prejudiced him, and accordingly they are harmless. "Our limited power permits us to reverse a lower court's decision only upon a finding of 'prejudicial error committed by such lower court.' R.C. 2501.02. Where the harm is not immediately apparent, the appellant must explain how the result would have materially differed were it not for the intervening error. Prejudice is not presumed." *Mangan v. Mangan,* 2d Dist. No. 07-CA-100, 2008-Ohio-3622, at ¶9.

**{¶77}** Stephen also takes issue with the portion of the decree where the trial court orders him to name Frances as an irrevocable beneficiary of a $25,000.00 life insurance policy he purportedly owns. Stephen correctly asserts that there is no evidence in the record, documentary or otherwise, about a $25,000.00 life insurance policy. There was testimony and documentary evidence of a $5,000.00 Nationwide life insurance policy held by Stephen. The trial court specifically dealt with that policy on page 16 of the decree, stating: "Defendant shall retain free and clear of any claim of Wife the ownership in the Nationwide Life Insurance Policy * * *." However, there is nothing in the record about a $25,000.00 life insurance policy.

**{¶78}** Thus, Stephen's fifth assignment of error, only as it relates to the $25,000.00 life insurance policy, is meritorious.

### Spousal Support

**{¶79}** Stephen's first and second assignments of error both concern the trial court's decision to award spousal support. An award of spousal support falls within the sound discretion of the trial court. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. However, that discretion is not completely unfettered, in that it is governed by the spousal support statute, R.C. 3105.18, which states, in pertinent part:

**{¶80}** "(B) In divorce and legal separation proceedings, upon the request of

either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.

**{¶81}** "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.

**{¶82}** "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.

**{¶83}** "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

**{¶84}** "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

**{¶85}** "(b) The relative earning abilities of the parties;

**{¶86}** "(c) The ages and the physical, mental, and emotional conditions of the parties;

**{¶87}** "(d) The retirement benefits of the parties;

**{¶88}** "(e) The duration of the marriage;

**{¶89}** "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

**{¶90}** "(g) The standard of living of the parties established during the marriage;

**{¶91}** "(h) The relative extent of education of the parties;

**{¶92}** "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

**{¶93}** "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

**{¶94}** "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

**{¶95}** "(l) The tax consequences, for each party, of an award of spousal support;

**{¶96}** "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

**{¶97}** "(n) Any other factor that the court expressly finds to be relevant and equitable.

**{¶98}** "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income." R.C. 3105.18(B)-(C).

**{¶99}** Within the limits provided by R.C. 3105.18, the trial court is granted broad discretion to determine what is equitable under the facts and circumstances of each case. *Kunkle*, supra. An abuse of discretion connotes more than an error of law or judgment; rather, it means the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore* at 219.

*Jurisdiction to Order Spousal Support*

**{¶100}** In his first assignment of error, Stephen argues:

**{¶101}** "The court erred in awarding lifetime spousal support when no specific request was made and therefore, the trial court lacked jurisdiction to make such an award."

**{¶102}** It is true that where spousal support is not specifically requested and the other party was unaware that spousal support was an issue at trial, the trial court lacks jurisdiction to award spousal support. *Woodland v. Woodland*, 7th Dist. No. 06-BE-9,

2007-Ohio-3503, at ¶22; see, also, R.C. 3105.18(B).

**{¶103}**  Here Stephen insists he had no notice that spousal support an issue, and claims no request was ever made.  He points to a December 20, 2005 pretrial statement filed by Frances in support of his argument.  "Question 17" of this document states: "If you are making a request for spousal support, state the basis for same in reference to the factors set forth in R.C. 3105.18(C)(1)(A)-(N):  (  ) If not, check here."

**{¶104}**  Frances neither checked the applicable box, nor stated the basis underlying her request for spousal support.  She left this question blank.  However, we conclude Stephen had adequate notice from other sources.  In the divorce complaint, Frances specifically requested spousal support.  On October 18, 2005, the court ordered Stephen to pay Frances $500.00 per month in temporary spousal support, effective September 8, 2005, which was the date Frances filed her complaint.  When Frances filed the pre-trial statement, as quoted above, she was receiving that temporary support.  The record reveals the temporary spousal support order was subsequently terminated, by stipulation of the parties, because Stephen had been placed on temporary sick leave and was not earning as much income.  In addition, in his proposed Findings of Fact and Conclusions of Law, Stephen admits knowledge that spousal support was an issue at trial, stating: "The Plaintiff has requested spousal support be paid in accordance with Ohio Revised Code R.C. 3105.18(C)."

**{¶105}**  The trial court had jurisdiction to award spousal support because Frances properly requested it, and Stephen had notice.  Accordingly, Stephen's first assignment of error is meritless.

*Consideration of the Spousal Support Factors*

**{¶106}**  In his second assignment of error, Stephen argues:

**{¶107}**  "The trial court committed reversible error in awarding spousal support without proper consideration and improper reliance upon the factors set forth in Ohio Revised Code Section 3105.18."

**{¶108}**  A review of the final decree reveals the trial court did consider all the required factors pursuant to R.C. 3105.18.  Specifically, the court stated it considered the

parties' relative incomes; their respective ages and physical, mental and emotional conditions; the parties' retirement benefits; the duration of the marriage; the fact that all children were emancipated; the parties' standard of living and education levels; the relative assets and liabilities; the contribution of each party to the education and training of the other; the time and expense necessary for potential retraining of the spouse; and the tax consequences of ordering spousal support.

{¶109} Based upon the court's review of those factors, it ordered Stephen to pay $100.00, plus processing fee, per month in spousal support to Frances, until further order of the court. The spousal support award was subject to termination upon the death of either party, remarriage by Frances, or Frances cohabitating with a non-relative male. The court retained jurisdiction over spousal support.

{¶110} The trial court's spousal support award is reasonable based on the facts of this case. Stephen does have a slightly higher income than Frances, their marriage lasted 34 years, and Frances testified that she has health problems, and limited mobility.

{¶111} Nonetheless, Stephen argues that the trial court impermissibly considered fault when awarding spousal support, and that the award was based on speculation, not facts. He takes issue with the following statements made by the trial court:

{¶112} "Given her medical conditions, given what has happened, given the 34 years that they were together, given both of their educations, 34 years you bought the farm. So it is a reservation of jurisdiction."

{¶113} "[S]pousal support cuts both ways so if something happens to him you may end up supporting him."

{¶114} Stephen argues that the court's "given what has happened" comment indicates the court considered fault when making its spousal support award. Stephen is correct that the trial court may not consider fault when fashioning a spousal support award. See *Bernard v. Bernard* (Jan. 30, 2002) 7th Dist. No. 00 CO 25, at *6. However, we do not believe the trial court's comment, or the record as a whole, demonstrates the court considered fault. Further, we find nothing problematic about the "bought the farm" comment. Rather this seems to be a colloquial way to state that in a marriage of long

duration, spousal support is often ordered. Finally, the trial court's comment that spousal "support cuts both ways" is not particularly problematic either. It appears the trial court was merely expressing its willingness to modify the spousal support obligation, should a future situation warrant it. This is precisely why the court reserved jurisdiction over the spousal support.

**{¶115}** Based on the foregoing, the trial court's spousal support award was not an abuse of discretion. Accordingly, Stephen's second assignment of error is meritless.

### Attorney Fees

**{¶116}** In Stephen's sole supplemental assignment of error he asserts:

**{¶117}** "Court erred and acted contrary to statutes and abused its discretion by awarding attorney fees to the Appellee."

**{¶118}** Frances counters that the attorney fee award was reasonable based on the fact that Stephen made his own determination to force a full trial on all issues, yet presented no independent witnesses or evidence to contradict the evidence Frances presented at trial. She also asserts that the decision to award attorney fees in this case hinges on credibility determinations best made by the trial court.

**{¶119}** "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court *may* consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A) (emphasis added.)

**{¶120}** "It is well-established that an award of attorney fees is within the sound discretion of the trial court." *Rand v. Rand* (1985), 18 Ohio St.3d 356, 359, 18 OBR 415, 481 N.E.2d 609. "[A] trial court's discretion will not be overruled absent an attitude that is unreasonable, arbitrary or unconscionable." Id., citing *Blakemore*, supra. The trial court did not abuse its discretion by awarding attorney fees in this case. The court based its decision on a number of factors including Stephen's insistence on litigating issues which

should not have been litigated, and Stephen's "recalcitrant" attitude during trial. R.C. 3105.73(A) also allows the court to consider the spousal support award, the division of marital property, and the parties' incomes when awarding attorney fees, but the statute does not so require. In this case, it appears the court chose not to factor these items into its decision. Looking at the totality of the circumstances in this case, the trial court's decision on the attorney fee matter award was reasonable. Accordingly, Stephen's supplemental assignment of error is meritless.

## Conclusion

{¶121} Stephen's fifth and sixth assignments of error are meritorious, in part. However, all of Stephen's other assignments of error are meritless. Accordingly, the judgment of the trial court is affirmed in part, reversed in part and remanded to the trial court for further proceedings.

Vukovich, P.J., concurs.

Waite, J., concurs.