SHULER, Appellant and Cross–Appellee,

v.

SHULER, Appellee and Cross–Appellant.

[Cite as *Shuler v. Shuler,* 164 Ohio App.3d 8, 2005-Ohio-5466.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–05–04.

Decided Oct. 17, 2005.

Maria Santo, for appellee and cross-appellant.

Sheila E. Minnich and Bridget D. Hawkins, for appellant and cross-appellee.

BRYANT, Judge.

{¶ 1} Plaintiff-appellant, Shirley L. Shuler, brings this appeal from the judgment of the Court of Common Pleas of Union County, Domestic Relations Division. Defendant-appellee, Dwight C. Shuler, brings a cross-appeal from that same judgment.

{¶ 2} On March 17, 1956, Dwight and Shirley were married. Three children were born during the marriage, all of whom are emancipated. On January 11, 2001, the parties separated, and Shirley filed for legal separation on March 20, 2003. Dwight subsequently filed a complaint for divorce, which was consolidated into the present case and was treated as an answer and counterclaim. On July 15, 2003, the parties stipulated as to the grounds of incompatibility for the divorce. On October 3, 2003, November 3, 2003, and November 18, 2003, hearings were held to determine the division of property and spousal support. The magistrate issued her decision on November 5, 2004. Dwight filed his objection to the decision on November 19, 2004, claiming that the trial court erred in the allocation of spousal support. On December 20, 2004, Shirley filed her objections to the magistrate's decision, claiming that the trial court erred in its

determination that three parcels of real estate were separate property. The trial court overruled the objections and adopted the magistrate's decision on January 6, 2005. Shirley objects to this judgment and raises the following assignments of error.

The trial court erred and abused its discretion in its ruling when it determined the real estate located at 13917 U.S. Route 36, Marysville, Union County, Ohio is separate property pursuant to [R.C. 3105.171(A)(6)(a)(ii) ] and not marital property pursuant to [R.C. 3105.171(A)(3)(a)(iii) ] and as such the trial court ruling thereon was against the manifest weight of the evidence.

The trial court erred and abused its discretion in its ruling when it determined the real estate known as the "mill lot" and the "junkyard" is separate property pursuant to [R.C. 3105.171(A)(6)(a)(ii) ] and not marital property pursuant to [R.C. 3105.171(A)(3)(a)(iii) ] and as such the trial court ruling thereon was against the manifest weight of the evidence.

{¶ 3} Dwight also appealed the trial court's judgment and raises the following assignment of error.

The trial court abused its discretion by the amount awarded for spousal support.

{¶ 4} Both of Shirley's assignments of error raise the issue of whether various real estate parcels are marital or separate property. Thus, they will be addressed together. A trial court has broad discretion in determining what constitutes marital property and separate property. *Leathem v. Leathem* (1994), 94 Ohio App.3d 470, 640 N.E.2d 1210. This court will not disturb the judgment of the trial court on review absent a showing of abuse of discretion. Id. An abuse of discretion is defined as an unreasonable, arbitrary, or unconscionable attitude. Id. This definition means there can be no sound reasoning to support the decision. *Maloney v. Maloney,* 160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864.

{¶ 5} The second assignment of error addresses the lots known as "the mill lot" and "the junkyard." These parcels were inherited by Dwight from his mother. The crux of Shirley's argument as to these parcels is that Dwight executed a joint and survivorship deed with Shirley on the property, thus making it marital property. Dwight testified that the sole reason he executed the deed was to enable him to get a loan on the property. The magistrate concluded, and the trial court agreed, that the testimony of Shirley was insufficient to find a donative intent. The magistrate further found that no improvements were made to either parcel. Given the conflicting testimony as to Dwight's intent, the magistrate determined which party was more credible. Since there is evidence on the record to support the trial court's conclusion, the trial court did not err in

finding that these parcels were separate property. The second assignment of error is overruled.

{¶ 6} In the first assignment of error, the parcel of land known as "the rental property" was at issue. As before, Dwight inherited this property from his mother. At the time of the inheritance, the property was worth $25,000. The parties stipulated that as of the final hearing date, the value of the rental property was $140,000. Shirley claims that this increase in value is half hers, because marital funds were used to make improvements. In addition, Shirley claims that she actively participated in the value increase by maintaining records. Dwight, on the other hand, presented testimony of a certified public accountant ("CPA") who stated that the rentals from the property were sufficient to pay for the mortgage used to make the improvements. The trial court specifically addressed this issue at length.

[Shirley's] argument is that, during the course of the marriage, [Dwight] transferred the Deed from his exclusive name into both parties' names bringing about a Joint and Survivorship Deed. On the other hand, [Dwight] testified that the sole purpose of putting the Deed into his wife's name was to obtain a loan for improvements made upon the property. In *Troutwine v. Troutwine*, [2nd Dist. No. 1552, 2002-Ohio-2938, 2002 WL 1332746], the Court of Appeals held that a spouse can convert a nonmarital asset to a marital asset by intervivos gift but there must be a demonstration that there was 1) an intent to transfer and 2) a relinquishment of ownership, dominion, or control. [Shirley's] testimony was insufficient to show that the donative intent was to gift the inherited property to his wife. * * *

[Shirley's] second argument is that the parties borrowed money during the course of the marriage using the equity of the inherited real estate to make various repairs to the rental property. However the Third District Court of Appeals in *Nuding v. Nuding* [ (Dec. 7, 1998), Mercer App. No. 10–97–13, 1998 WL 856923, unreported], rejected the argument that a mortgage destroys the traced separate premarital interest in the real estate. [Shirley] further testified that she kept records of the tenant's payments on the rental property, and thus the property was not a passive investment but rather was actively worked by both parties. However [Shirley's] bookkeeping is insufficient to convert passive property into marital property. *Dionne v. Dionne* [ (Mar. 28, 1994), Starke App. No. CA 9314, 1994 WL 115927, unreported].

Plaintiff's third argument is that the parties took marital funds to make improvements upon the rental property and to build a barn on the rental property. This argument is pursuant to the case of *Middendorf v. Middendorf* [ (1998), 82 Ohio St.3d 397, 696 N.E.2d 575], stating that if marital funds were used to improve a non-marital asset then [Shirley] would be entitled to a

portion of the non-marital asset. However, testimony was given on behalf of [Dwight], by John Woerner, CPA with Conrad, Leibold and Woerner that indicates the parties always derived more income from rent charged on the rental house and on the "junk yard" than was paid out for improvements. The accounting showed that a recapture of depreciation derived a total profit for the parties from 1981 (the year in which the property was inherited by [Dwight]) to 2002 in the amount of $1,885.00, taking into consideration all of the improvements made to the "rental property", as well as the building of the barn (Vol. III, Transcript page 8).

[Shirley] testified on her own behalf, that her figures showed that the parties made a net loss in those years. However, upon cross examination, [Shirley] admitted that she did not take into consideration the depreciation which is just a "paper loss" and not a real loss. (Vol. III, Transcript page 48).

\* \* \*

The Court finds that there is insufficient evidence to show that the separate property inherited by [Dwight] known as the "Mill Lot", the "Junkyard" and the "Rental Property" was converted to a marital asset during the course of the marriage.

\* \* \*

For the reasons set forth in the discussion under Division of Marital Assets, the Court finds that the "Mill Lot", the "Junkyard", the "Rental Property" and "the Barn" are the separate property of [Dwight] and the Court awards the "Mill Lot", the "Junkyard", "the Barn" and the "Rental Property" to [Dwight] in accordance with R.C. 3105.171(D).

{¶ 7} A review of the evidence indicates that the rental income from the property was placed in the joint account and that the mortgage on the property was paid from that account. Shirley testified that the only thing she did was deposit the rent checks and write the checks to the bank for the mortgage. The testimony of the CPA was that the rental property was profitable and that the income was sufficient to pay the mortgage. This testimony was based upon review of the tax returns from 1981 to 2002. With this evidence before it, the trial court concluded that the property was separate property. Since there is evidence to support this conclusion, the trial court did not abuse its discretion in making this finding. The first assignment of error is overruled.

{¶ 8} On cross-appeal, Dwight challenges the trial court's imposition of spousal support. Specifically, Dwight claims that the trial court erred by not considering the debt on his vehicle or his real estate taxes and utilities. This court notes that the trial court considered the utilities and real estate taxes that Shirley would be required to pay in order to remain in the marital home. The

trial court then considered the fact that Dwight pays lot rentals totaling $491 per month.[1] Although Dwight testified that he pays utilities, he was unable to provide any figures to the trial court. The trial court also considered Dwight's mortgage payment of $205 for the barn and land. However, the trial court did not consider the cost of the mortgages and real estate taxes that Dwight was required to pay on the separate property that is rented out. Instead, the trial court considered Dwight's gross income. Shirley herself testified that a mortgage payment of $156 was due on the rental property. Given this testimony, the trial court erred in finding Dwight's net income to be $3,048.09, when that figure is based upon gross figures. Thus, the assignment of error on cross-appeal is sustained.

{¶ 9} The judgment of the Court of Common Pleas of Union County, Domestic Relations Division, is affirmed in part and reversed in part. The matter is remanded for reconsideration of the amount of spousal support.

Judgment affirmed in part
and reversed in part,
and cause remanded.

CUPP, P.J., and ROGERS, J., concur.

---

1. The lot rentals consisted of lot rent of $140 and Florida lot rental of $351.