[Cite as *Kramer v. Kramer*, 2019-Ohio-4865.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Linda Kramer, :

      Plaintiff-Appellee, :

                           No. 18AP-933

v. : (C.P.C. No. 17DR-2954)

Richard Kramer, : (REGULAR CALENDAR)

      Defendant-Appellant. :

D E C I S I O N

Rendered on November 26, 2019

**On brief:** *Cynthia M. Roy*, for appellee.

**On brief:** *Anthony W. Greco* and *Aaron E. Kenter*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

SADLER, J.

{¶ 1} Defendant-appellant, Richard Kramer, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce and terminating his marriage to plaintiff-appellee, Linda Kramer. For the reasons that follow, we affirm in part, reverse in part, and remand this matter to the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The parties were married on October 6, 2001. Each party had three children from previous marriages, but there were no children born of the marriage. The parties purchased a home in Gahanna, Ohio in 2001. Appellant's children resided with the couple until adulthood. Appellee's children also lived with the couple, and appellee was the

primary caregiver for all six children. Though appellant was the breadwinner in the family, appellee contributed to the household income by taking various part-time employment.

{¶ 3} The parties were essentially debt free when they married. According to appellee, she contributed to the purchase price for the Gahanna home and helped furnish the residence out of the proceeds of the sale of her former Indiana residence to her parents. During the marriage, the couple frequently vacationed with friends at casinos throughout the country. In 2007, appellee sought financial assistance from her parents to pay off high-interest debt the couple had incurred using credit cards in appellee's name. Appellee's parents, the Davenports, provided the couple with $30,900.

{¶ 4} Beginning in 2013, the couple experienced financial difficulties, primarily due to mounting credit card debt. Each of the parties consulted with legal counsel about possible divorce. Appellee maintains that appellant was not treating her as an equal partner in the marriage, and he had engaged in verbal abuse. She reportedly told her parents: "I was not happy in my marriage. I had mentioned that I don't know how long I can stay with him, but I want to get through school so I can live on my own." (Tr. Vol. III at 394.)

{¶ 5} Appellant did file a complaint for divorce, but he later dismissed the action. Appellee subsequently enrolled in nursing school at Columbus State Community College. At or about this time, appellant made a suicide attempt by overdose.

{¶ 6} Appellee obtained her nursing degree in May 2017, and in August of that year, she informed appellant she wanted a divorce. Appellant claims he was "extremely shocked" by the news. (Tr. Vol. II at 281.) Appellee filed her complaint for divorce on August 7, 2017, alleging gross neglect of duty and incompatibility. On September 12, 2017, appellant filed his answer and counterclaim seeking a divorce on the same grounds.

{¶ 7} By agreement of the parties, appellee vacated the marital residence in October 2017. Appellee moved in with her parents in Noblesville, Indiana. Additionally, by an agreed temporary order filed September 26, 2017, appellant paid $10,000 to appellee as a preliminary property distribution and appellant obtained exclusive use of the marital residence. In an amended temporary order dated February 21, 2018, a court magistrate ordered appellant to pay appellee $500 per month in temporary spousal support effective

March 1, 2018[1] and attorney fees of $1,500.  The order required each party to pay his or her own living expenses thereafter.

{¶ 8}  On June 1, 2018, appellant moved the trial court, pursuant to R.C. 3105.171(A)(2), for an order establishing January 1, 2018 as the de facto termination of the marriage.  On November 2, 2018, appellant filed a "notice of default on defendant's second requests for admission."  On November 5, 2018, appellant filed a supplemental notice.

{¶ 9}  The trial of this matter was conducted over four days beginning November 6, 2018.  The disputed issues at trial included: the de facto date of marriage termination; the value of the marital residence; the proper characterization of the $30,900 appellee received from her parents in 2007; the allocation of the debt incurred on appellant's credit card; and the amount of spousal support.  On November 27, 2018, the trial court issued a judgment entry and decree of divorce whereby the trial court terminated the marriage on the grounds of incompatibility and living separate and apart for over one year.

{¶ 10}  With regard to the disputed issues, the trial court found that the marriage terminated on August 7, 2017, the date appellee filed her complaint for divorce.  The trial court ordered appellant to pay $1,500 per month in spousal support to appellee for 72 months.  The trial court further determined the $30,900 appellee received from her parents in 2007 was a loan to the couple and allocated the obligation to repay the remaining balance of $24,000 to appellee.  Each party was ordered to pay the credit card balances incurred on the cards in his or her own name as of August 7, 2017 and to hold the other harmless thereon.

{¶ 11}  With regard to the marital residence, the trial court ordered the parties to sell the marital residence and to "place[] [it] on the market by February 1, 2019, unless the parties agree to a different settlement of the same."  (Nov. 27, 2018 Jgmt. Entry & Decree at 6.)  During the pendency of the sale, the trial court ordered appellant "shall be responsible for all expenses related to the marital residence, including but not limited to the mortgage, taxes, home owner's insurance, and utilities."  (Jgmt. Entry & Decree at 7.) The trial court ordered the parties to distribute the proceeds from the sale in the following priority: (1) "[s]atisfaction of the mortgage, real estate commissions, property taxes, and all

---

[1] We note the February 21, 2018 order provides for temporary spousal support beginning March 1, 2017; however, the parties agree temporary spousal support payments began March 1, 2018.

other customary and ordinary costs of sale"; (2) repayment to appellant and/or appellee "for the cost of the recommended repairs/improvements to prepare the house for sale"; and (3) the remainder divided equally between the parties. (Jgmt. Entry & Decree at 7.) The trial court noted: "As no value of the house was provided as of August 7, 2017, the Court finds the above allocation of the sale proceeds to be the most equitable division of same." (Jgmt. Entry & Decree at 7.)

{¶ 12} Appellant timely appealed to this court from the November 27, 2018 judgment entry and decree of divorce. Appellant moved the trial court, pursuant to Civ.R. 62, for a stay of the November 27, 2018 judgment pending appeal. The record does not reveal a trial court ruling on the motion. On January 29, 2019, appellant moved this court, pursuant to App.R. 7(A), for a stay of the judgment pending appeal. By journal entry dated February 5, 2019, we denied the motion.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant assigns the following as trial court error:

> [1.] The trial court erred to the material prejudice of Defendant-Appellant in selecting August 7, 2017 as the de facto termination of marriage date pursuant to R.C. 3105.171(A)(2).
>
> [2.] The trial court erred to the material prejudice of Defendant-Appellant in failing to divide the marital property equitably between the parties as required by R.C. 3105.171(B).
>
> [3.] The trial court erred to the material prejudice of Defendant-Appellant in awarding spousal support that is not reasonable under R.C. 3105.18(B) because the award is based on erroneous factual findings and is in excess of Plaintiff-Appellee's spousal support request.

## III. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 14} In appellant's first assignment of error, appellant contends the trial court erred in selecting August 7, 2017 as the de facto date of marriage termination. We disagree.

{¶ 15} When determining the date of the termination of the parties' marriage, for purposes of calculating a division of marital property, R.C. 3105.171(A)(2) provides:

> "During the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶ 16} R.C. 3105.171(A)(2) authorizes a trial court, in the exercise of its sound discretion, to utilize a de facto date of termination of the marriage if such is equitable in a particular case. *Mantle v. Sterry*, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 10. "[A] court's determination as to when to apply a de facto termination date of a marriage falls well within the broad discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *Grody v. Grody*, 10th Dist. No. 07AP-690, 2008-Ohio-4682, ¶ 8, citing *Heyman v. Heyman*, 10th Dist. No. 05AP-475, 2006-Ohio-1345, ¶ 32. "It is well-established that an abuse of discretion connotes more than a mere error of law or judgment, but rather, implies a court's decision is unreasonable, arbitrary or unconscionable." *Grody* at ¶ 8, citing *Rogers v. Rogers*, 10th Dist. No. 96APF10-1333 (Sept. 2, 1997). As a general rule, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, and continually maintain separate residences, separate business activities, and separate bank accounts. *Mantle* at ¶ 13.

{¶ 17} This court, in *Rogers*, "provided guidance to the trial courts as to the manner of evaluating the facts of each case in order to determine whether the use of a de facto termination date is equitable." *Mantle* at ¶ 11. In *Rogers*, we instructed that an alternative to the date of the final hearing " 'should be employed when the totality of the circumstances and equitable considerations between the parties demonstrate that there was a clear and bilateral breakdown of the marriage and the parties have ceased contributing to each other for each other's benefit as would partners in a shared enterprise or joint undertaking.' " *Mantle* at ¶ 11, quoting *Rogers*. "The court should look beyond merely the date of separation, and look at the actual nature of the parties' relationship." *Mantle* at ¶ 11, citing *Rogers*.

{¶ 18} The trial court made the following relevant findings and conclusions:

> [B]y the time [appellee] filed for divorce the parties had not been physically intimate for quite some time, and it is apparent the termination of their marriage had been looming for years. They have made no attempts at reconciliation.
>
> [Appellant] continued to pay communal living expenses such as the mortgage and utilities, but he and [appellee] were not operating as financial partners, nor marriage partners, nor maintaining joint bank accounts, after she filed for divorce on August 7, 2017.
>
> By agreement, [appellee] vacated the marital residence in October 2017 and moved in with her parents. The parties operated financially independently but for filing a joint 2017 tax return. [Appellant] continued to accrue and increase the balance on credit card debts on accounts [appellee] never had access to, while she used her pre-decree property settlement to pay off debts in her name. The Court finds as of August 7, 2017, the parties' marriage was irretrievably broken.

(Jgmt. Entry & Decree at 5.)

{¶ 19} Appellant maintains Ohio law does not permit a trial court to fix a de facto termination date that precedes physical separation of the parties. This court, however, rejected a similar argument in *Grody.* In that case, the husband argued the trial court erred in utilizing a de facto termination date rather than the date of final hearing because the parties continued to live together after the de facto termination. On appeal, this court held there was no error because a lack of separate residences did not show the parties did not intend to terminate the marriage. *Id.* at ¶ 10. In affirming the trial court's determination, we noted the trial court had referred to specific portions of the transcript in support of the de facto date and had considered evidence of the parties' prior dissolution process that was not completed because of distrust concerns, as well as evidence of the "ongoing difficult relationship" and the parties' failure to resolve issues other than those pertaining to the children. *Id.* This court also noted the trial court "recognized that though appellant moved out of the residence and then back in after approximately nine months, he did so only 'due to financial constraints.' " *Id.*

{¶ 20} Here, the trial court found the parties "were not operating as financial partners, nor marriage partners, nor maintaining joint bank accounts, after she filed for divorce on August 7, 2017," and the parties "had not been physically intimate for quite some

time" prior to the date appellee filed her complaint for divorce. (Jgmt. Entry & Decree at 5.) The evidence in the record supports the trial court's findings. Though appellant testified that he was "extremely shocked" when appellee told him in August 2017 that she wanted a divorce, the evidence supports the trial court's finding that "the termination of their marriage had been looming for years." (Tr. Vol. II at 281; Jgmt. Entry & Decree at 5.) Appellee had told her parents in 2013 that the marriage was over and that she needed to obtain her nursing degree so she could be financially self-sufficient. The evidence shows that both parties had sought advice from legal counsel at that time regarding divorce, and appellant subsequently filed a complaint for divorce but later dismissed the complaint. Though appellee did not move out of the marital residence until October 2017, the evidence supports the trial court's finding that the parties "made no attempts at reconciliation" after appellee told appellant she wanted a divorce. (Jgmt. Entry & Decree at 5.) Additionally, the record shows while the parties were able to agree on some relatively minor issues pertaining to the divorce, they disagreed on the primary issues related to the divorce including the allocation of marital debt, the division of marital property, the disposition of the marital residence, and spousal support.

{¶ 21} Appellant argues that because the parties filed a joint tax return and appellant continued to pay mutual expenses after appellee filed for divorce, the trial court abused its discretion in fixing a marriage termination date of August 7, 2017. In light of the actual nature of the parties' relationship subsequent to August 7, 2017, as evidenced in the record, we cannot say the trial court failed to properly weigh such evidence in determining the de facto marriage termination date. The evidence in the record supports the trial court's finding that the parties were "not operating as financial partners, nor marriage partners, nor maintaining joint bank accounts, after she filed for divorce on August 7, 2017." (Jgmt. Entry & Decree at 5.)

{¶ 22} Our review of the trial court's decision and the evidence in the record supports the trial court's conclusion there was a clear and bilateral breakdown of the marriage by August 7, 2017, and the parties had ceased contributing to each other for each other's benefit as partners in a shared enterprise or joint undertaking. On this record, we cannot say the trial court court's decision to fix the marriage termination date at August 7,

2017 was either unreasonable, arbitrary, or unconscionable. Accordingly, we hold the trial court did not abuse its discretion in establishing the de facto date of marriage termination.

{¶ 23} To the extent appellant claims the trial court violated his right to due process of law by selecting a de facto date of marriage termination that neither of the parties proposed, R.C. 3105.171 clearly provided notice to the parties that the trial court could select any date of termination supported by the record "that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(b). Thus, we perceive no due process violation arising from the trial court's decision to select a de facto date of marriage termination.

{¶ 24} Appellant further contends the trial court erred by establishing a de facto date of the marriage and then failing to value the marital residence as of that date. However, as the valuation of the marital residence is specifically addressed in appellant's second assignment of error, we will consider appellant's argument in ruling on appellant's second assignment of error.

{¶ 25} For the foregoing reasons, appellant's first assignment of error is overruled.

### B. Appellant's Second Assignment of Error

{¶ 26} In appellant's second assignment of error, appellant argues the trial court erred in failing to divide the marital property equitably between the parties as required by R.C. 3105.171(B). More particularly, appellant contends the trial court abused its discretion by failing to value the marital residence as of the de facto date of marriage termination and by its ruling on the $30,900 sum appellee received from her parents.

### 1. The Funds Appellee Received From the Davenports

{¶ 27} Appellant first contends the $30,900 appellee received from her parents in 2007 was a gift, not a loan. Based on the evidence the parties had paid down the original sum to $24,000, the trial court found the $30,900 received from the Davenports was a loan to the couple. The trial court found appellee's testimony that the $30,900 received from her parents was a loan "credible, and the fact she and her husband had sent numerous regular payments by check to her parents was evidence of a loan, not a gift." (Jgmt. Entry & Decree at 12.) The trial court also found appellee's "memory * * * more accurate" regarding the events surrounding the payment from her parents and the efforts the parties made to repay her parents. (Jgmt. Entry & Decree at 12.)

{¶ 28} The weight of the evidence and credibility of witnesses are issues left to the sound discretion of the trial court. *Galloway v. Khan*, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 29, citing *White v. White*, 4th Dist. No. 03CA11, 2003-Ohio-6316, ¶ 15. The underlying rationale is that the trier of fact is better situated than an appellate court to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations to weigh and assess credibility. *Galloway* at ¶ 29, citing *White* at ¶ 15. Accordingly, the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. *Galloway* at ¶ 29, citing *White* at ¶ 15.

{¶ 29} Here, the trial court found appellee more credible than appellant, and appellee's memory of the relevant facts was better than appellant's. The trial court noted that appellant had responded "I don't recall" to many of the questions posed to him and that appellant's health issues—two prior heart attacks—had affected his memory. (Jgmt. Entry & Decree at 12.) Though appellant argues that appellee's parents have forgiven the debt, there is a dearth of evidence supporting appellant's argument, other than his own personal opinion. On this record, we cannot say the trial court erred when it concluded the $30,900 received from appellee's parents was a loan to the parties and, therefore, marital debt. Accordingly, the allocation of the debt to appellee did not result in an inequitable property distribution in this case.

### 2. The Value of the Marital Residence

#### a. *Failure to Assign Value to the Marital Residence*

{¶ 30} Appellant argues the trial court, having determined the marriage terminated on August 7, 2017, should have valued the residence as of that date rather than the date of sale. We agree with appellant.

{¶ 31} Appellant's position at trial was that he should be permitted to retain the residence and pay appellee her share of the difference between the mortgage payoff and the value of the residence on the date the marriage terminated. Appellee desired the sale of the marital residence. The trial court made the following finding regarding the marital residence:

> [T]he Court concludes that the best way to realize the true fair market value is to sell the home. The parties have no minor children, and no strong reasons not to place the home on the market as [appellee] desires. Both parties are gainfully employed and can purchase their own homes. [Appellant]

> acknowledged he was previously in contact with a realtor and looked into putting the house on the market. Thus, the idea of selling the home is not foreign to [appellant].

(Jgmt. Entry & Decree at 6.)

{¶ 32} A trial court's division of the marital property which may entail ordering the sale of the marital residence is governed by the abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). Our review of the record reveals support for the trial court's order requiring the parties to sell the marital residence. Throughout her testimony, appellee maintained that appellant's derogatory credit history would impair his ability to secure refinancing of the marital residence. The record is replete with evidence of the parties' chronic overspending during the marriage, overwhelming credit card debt, and appellant's significant gambling debts, which he continues to incur. The evidence shows appellant sustained reported net gambling losses of between $10,407 and $35,856 from 2012 to 2017. The evidence also shows appellant spends significant sums on gambling related expenses each year. Thus, we perceive no abuse of discretion on the part of the trial court in ordering the sale of the property. Given appellant's tenuous financial situation, an order to sell the marital residence was the best way to assure the parties would receive an equitable share of the marital property.

{¶ 33} With regard to appellant's contention that the trial court erred when it ordered the sale of the marital residence without consideration of the costs of sale, R.C. 3105.171 provides that in making a division of marital property and the amount of any distributive award, the court shall consider a number of factors, including "[t]he costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property." R.C. 3105.171(F)(7). The evidence in the record establishes the balance of the mortgage on the marital residence as of January 1, 2018 is $110,660. It is clear the trial court considered the costs of sale in this case given the trial court's order requiring the parties to prioritize "[s]atisfaction of the mortgage, real estate commissions, property taxes, *and all other customary and ordinary costs of sale*." (Emphasis added.) (Jgmt. Entry & Decree at 7.) Though it is true that the sale of the marital residence will result in costs, on this record we cannot say that the trial court abused its discretion in ordering the parties to sell the marital residence. Under the circumstances, a sale of the property was a necessary way to assure the parties received an equitable property distribution. R.C. 3105.171(F)(7).

{¶ 34} Turning to appellant's primary argument in support of the second assignment of error, we agree with appellant that the trial court abused its discretion when it determined that the value of the marital residence would be the eventual sale price, rather than the value on the date of de facto marriage termination. Generally, " 'a trial court should consistently apply the same set of dates when evaluating marital property that is subject to division and distribution in a divorce proceeding.' " *Kachmar v. Kachmar*, 7th Dist. No. 08 MA 90, 2010-Ohio-1311, ¶ 47, quoting *Angles v. Angles*, 5th Dist. No. 00CA1 (Sept. 15, 2000). "If the circumstances of a given case so require, the trial court may choose different dates for valuation purposes so long as the court adequately explains its reasons, and its decision does not constitute an abuse of discretion." *Kachmar* at ¶ 47, citing *Angles*; *see also Hyslop v. Hyslop*, 6th Dist. No. WD 01-059, 2002-Ohio-4656, ¶ 36. R.C. 3105.171(G) requires the trial court to make written findings that support the determination that marital property has been equitably divided and to specify the dates it used in determining the meaning of "during the marriage." *Kachmar* at ¶ 47, citing *Angles*. This court, however, has previously held that a trial court abuses its discretion when it chooses a division date that occurs after the end of the marriage. *See Crowder v. Crowder*, 10th Dist. No. 98AP-1124 (Aug. 5, 1999).

{¶ 35} In *Crowder*, this court held the trial court abused its discretion when it ordered the marital residence sold and for the parties to divide the sale proceeds equally, even though the trial court had established a prior de facto termination date based on uncontroverted evidence of a bilateral breakdown of the marriage. In *Crowder*, we reversed the trial court decision and remanded the matter for the trial court to value the marital residence on the de facto termination date rather than the date of the final hearing. *Id.* In so holding, we stated that "[e]quity in this case requires that appellee receive only half of the value of the marital residence at the time of the de facto termination of the marriage." *Id.*

{¶ 36} Here, the only admissible evidence as to the value of the marital residence was the testimony of appellant's "certified and experienced residential real estate appraiser, Benjamin Todd." (Jgmt. Entry & Decree at 6.) The trial court, following a vior dire of the witness, ruled that Todd was qualified as an expert residential real estate appraiser. The trial court noted that "Todd's opinion based on comparable sales and considering the dated

condition of the property, as well as its C-4 'shows its age' condition, is that the fair market value is $156,000 as of April 24, 2018. *See* Defendant's Exhibit B." (Emphasis sic.) (Jgmt. Entry & Decree at 6.) Though the transcript shows appellee consulted a real estate appraiser during the litigation, appellee did not produce the testimony of an expert real estate appraiser in this matter and did not submit any other admissible evidence of value.

{¶ 37} The trial court stated: "As no value of the house was provided as of August 7, 2017, the Court finds the above allocation of the sale proceeds to be the most equitable division of same." (Jgmt. Entry & Decree at 7.) Essentially, the trial court disregarded the only admissible evidence as to the value of the marital residence based on a finding that the date of Todd's appraisal, April 24, 2018, could not be used to determine the value of the marital residence on August 7, 2017. The trial court, however, failed to explain how the future sale price of the marital residence would better reflect the value of the marital residence on August 7, 2017. On this record, such a conclusion is not reasonable. Moreover, we note that Todd testified "[t]he values have been stable for some time now." (Tr. Vol. I at 33.)

{¶ 38} It is also worth noting the trial court ordered appellant to continue to pay the mortgage, taxes, and insurance on the property pending sale. Though the trial court granted exclusive occupancy of the residence from October 7, 2017, appellee presented no evidence that she is paying her parents for the benefit of living in their home. By failing to value the marital residence on the date of the de facto marital termination, appellee will receive the benefit of payments appellant made to reduce the mortgage principal balance, without a corresponding housing expense on her own part. *See Galloway*, 2006-Ohio-6637, at ¶ 25 (because the husband was required to pay for his separate residence during pendency of divorce, wife, who was granted exclusive use of the marital residence during the divorce proceedings, was not entitled to credit for mortgage payments on the marital residence).

{¶ 39} Based on the foregoing, we hold the trial court abused its discretion when it ordered the parties to split the future proceeds of the sale of the marital residence after having determined the de facto termination of the marriage occurred on August 7, 2017. On this record, the trial court was obligated to assign a value to the property as of the de facto date of marriage termination and to equitably divide all the marital property as of that

date. *Crowder*. *See also Kachmar* at ¶ 47 (citing *Crowder*, the court held that "the trial court abuses its discretion when it chooses a division date that occurs after the end of the marriage"); *Alexander v. Alexander*, 10th Dist. No. 09AP-262, 2009-Ohio-5856, ¶ 37 (citing *Crowder*, this court rejected the argument that the trial court abused its discretion by valuing all the marital property, including the marital residence and any accompanying appreciation, as of the de facto date of marital termination). Because the trial court properly exercised its discretion when it ordered the sale of the marital residence to facilitate the property division but abused its discretion when it failed to determine the value of the residence on the date the marriage terminated, we must sustain appellant's second assignment of error and remand the matter to the trial court for a determination of value.

### b. Request for Admissions

{¶ 40} Appellant next contends the trial court erred when it refused to assign a value of $156,000 to the marital residence because appellee admitted that value when she failed to respond to appellant's second set of requests for admission. We disagree.

{¶ 41} Civ.R. 36(A) provides that "[a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Civ.R. 26(B) set forth in the request, that relate to statements or opinions of fact or of the application of law to fact." The record shows that on September 9, 2018, appellant served his second request for admissions on appellee. Request for admission No. 17 asked appellee to: "Admit that the value of the 419 Forestwood Dr. is $156,000." On November 2, 2018, appellant filed a "notice of default on defendant's second requests for admission." On November 5, 2018, appellant filed a supplemental notice. On November 6, 2018, the first day of trial, appellee's counsel personally served appellant's counsel with appellee's response to appellant's second request for admissions, which was signed by appellee on October 30, 2018. (Tr. Vol. III at 446.) Therein, appellee responded "[d]eny" as to request for admission No. 17. (Def.'s Ex. BBB at 4.)

{¶ 42} Civ.R. 36(B) sets forth the effect of admission as follows:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of

Rule 16 governing modification of a pretrial order, *the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining his action or defense on the merits.* Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against the party in any other proceeding.

(Emphasis added.)

{¶ 43} Even though appellee did not expressly move the trial court to withdraw admissions arising from her failure to timely respond, it is evident from the record that the trial court permitted appellee to withdraw the admissions. Appellant's trial counsel subsequently examined appellee regarding her response to nearly every enumerated request, and the record shows appellee made several admissions, but appellant's counsel did not inquire about request for admission No. 17. As previously noted, appellant did present the testimony of a licensed real estate appraiser who opined the marital residence had a value of $156,000 on April 24, 2018. On this record, we cannot say the trial court abused its discretion by permitting appellee to withdraw her admission to request for admission No. 17 and try the issue of value on the merits. Moreover, because we have ordered the trial court to determine the value to the residence as of August 7, 2017, appellant cannot demonstrate prejudice arising from the trial court's decision to permit appellee to withdraw her prior admission.

{¶ 44} Given our determination the trial court did not err when it ordered the sale of the marital residence to facilitate property distribution but abused its discretion when it failed to determine the value of the residence as of the date of marriage termination, we must sustain appellant's second assignment of error and remand the matter to the trial court for a determination of value. Appellant's second assignment of error is sustained.

## C. Appellant's Third Assignment of Error

{¶ 45} In appellant's third assignment of error, appellant claims the trial court erred when it ordered him to pay $1,500 per month in spousal support for 72 months. Appellant first contends the trial court erred when it made an upward adjustment to the budget

submitted by appellee and then determined appellee's need for spousal support based on the adjusted budget.  We disagree.

{¶ 46} In our view, the fact that appellee submitted a "very minimal budget" does not mean that an award of spousal support to appellee should have no relationship to the standard of living the parties established during the marriage and the budget submitted by appellant.  (Tr. Vol. III at 459-60.)  R.C. 3105.18(C)(1) provides, in relevant part, as follows:

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
>
> * * *
>
> (g)  The standard of living of the parties established during the marriage;
>
> * * *
>
> (n)  Any other factor that the court expressly finds to be relevant and equitable.

{¶ 47} Our review of the evidence supports the trial court's finding that appellee's budget did not account for necessary expenses that appellant included in his budget.  For example, appellee's budget did not include a rent or mortgage payment even though appellee testified she intended to move out of her parents' home after the divorce.  Appellant's budget included such an expense.  The trial court noted appellee's submitted budget was "sparse and inadequate" compared to that of appellant.  (Jgmt. Entry & Decree at 23.)  The record supports the trial court's finding, and we cannot say the trial court abused its discretion when it adjusted appellee's budget for purposes of determining spousal support.

{¶ 48} Appellant next contends the trial court erred when it mistakenly utilized appellant's gross income in determining his spousal support obligation but utilized appellee's net income in determining her need for spousal support.  We agree with appellant.  Appellee does not dispute appellant's assertion that the trial court compared appellant's gross income to appellee's net income in determining appellant's spousal support obligation.  Rather, appellee merely maintains the award of $1,500 is not unreasonable.

{¶ 49} Our review of the record and the trial court decision confirms the trial court used disparate income figures in determining appellant's spousal support obligation. *See* Exhibit JJ; Tr. Vol. II at 270. It was error for the trial court to employ this sort of apples-to-oranges approach in determining appellant's spousal support obligation. *See Shuler v. Shuler*, 164 Ohio App.3d 8, 2005-Ohio-5466 (3d Dist.), *appeal not accepted for review*, 108 Ohio St.3d 1489, 2006-Ohio-962 (where the trial court's finding as to the husband's net income was erroneous due to consideration of gross figures, the resulting award of spousal support was also erroneous, requiring a remand for proper recalculation). Accordingly, we hold the trial court erred in calculating spousal support, and we remand the matter to the trial court for recalculation of appellant's support obligation. Because we have ruled the trial court decision on spousal support must be revered and the cause remanded for redetermination of spousal support, we need not address appellant's alternative argument it was error for the trial court to award spousal support in an amount greater than that which was requested by appellee.

{¶ 50} For the foregoing reasons, appellant's third assignment of error is sustained.

## IV. CONCLUSION

{¶ 51} Having overruled appellant's first assignment of error but having sustained appellant's second and third assignments of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and we remand the matter for further proceedings consistent with this decision.

*Judgment affirmed in part, reversed in part;*
*cause remanded.*

DORRIAN and BEATTY BLUNT, JJ., concur.

_____